STATE OF NORTH CAROLINA v. ROBERT JOSEPH KARBAS

No. 7510SC637

(Filed 21 January 1976)

1. **Criminal Law §§ 16, 92— concurrent jurisdiction in district and superior courts — consolidation of felony and misdemeanor charges — nol pros of misdemeanor charge in district court**

A misdemeanor charge for driving under the influence and a felony charge of manslaughter were based on the same transaction within the meaning of G.S. 7A-271(a)(3), and the superior court therefore had jurisdiction of both charges and had the right to proceed to the trial on the misdemeanor charge under the joinder exception of this statute, the "original jurisdiction" of the district court having been lost after the *nolle prosequi* was entered in that court.

2. **Automobiles § 126; Criminal Law § 55— driving under the influence — blood samples — chain of custody**

In a prosecution for driving under the influence and manslaughter, the trial court properly allowed the testimony of an expert witness relative to the alcohol content of the defendant's blood where the chain of custody of the blood samples taken from defendant was sufficiently established.

APPEAL by defendant from *Lee, Judge.* Judgments entered 7 March 1975 in Superior Court, WAKE County. Heard in the Court of Appeals 13 November 1975.

On 3 March 1975, defendant came on for trial under an indictment charging (1) manslaughter and (2) operating a motor vehicle on a public highway while under the influence of intoxicating liquor. In a pretrial motion by defendant to dismiss the "driving under the influence" charge on grounds that the Superior Court lacked jurisdiction of that charge, it was stipulated that the District Court, Wake County, had entered theretofore a *nolle prosequi.* The motion was denied and the two charges were consolidated for trial.

The State's evidence tends to show that on 17 October 1973, defendant was driving his car in the Town of Wake Forest; that Charles Runion looked out his apartment window and saw a light colored Ford station wagon strike the curb on the median on North Avenue and was on the wrong side of the road; Runion watched the vehicle until it disappeared from his view and approximately four seconds later, he heard a crash. He went to the scene and found defendant's station wagon on the wrong side of the highway and observed a Plymouth Duster, "nose to

nose with a light colored Ford station wagon." Other witnesses testified that they went to the scene of the collision and saw the defendant behind the steering wheel of the Ford and that he had a mild odor of alcohol about his breath. A chemical analysis of blood taken from the defendant revealed .16% alcohol in his blood.

Defendant offered the testimony of Gretchen Horton to the effect that defendant was at her home drinking coffee and that he did not appear to be intoxicated when he left. Defendant testified that prior to going to the Horton home he had consumed four beers, and that immediately prior to the accident, he dropped a lit cigarette in the car, made several attempts to retrieve it, and on the last attempt saw an approaching vehicle.

Defendant was found guilty on both charges by a jury and from judgment imposing imprisonment, defendant appeals.

*Attorney General Edmisten by Assistant Attorney General Ralf F. Haskell for the State.*

*Gulley & Green by Charles P. Green, Jr., for defendant appellant.*

CLARK, Judge.

[1] Defendant's contention that the Superior Court did not have jurisdiction of the "driving under the influence" charge is based on the argument that the Superior Court could acquire jurisdiction of the misdemeanor only by appeal from a District Court which retained its exclusive, original jurisdiction with the *nolle prosequi*. With this position we disagree. G.S. 7A-272 grants original jurisdiction for the trial of misdemeanor cases to the District Court, "except as provided in this article." G.S. 7A-271(a) provides in part as follows:

"The superior court has exclusive, original jurisdiction over all criminal actions not assigned to the district court division by this article, except that the superior court has jurisdiction to try a misdemeanor:

\*   \*   \*

(3) Which may be properly consolidated for trial with a felony under G.S. 15-152;"

G.S. 15A-926(a) has replaced former G.S. 15-152 and both statutes provide for the same situation, a transactional test for

coverage by them: "Two or more offenses may be joined in one pleading when the offenses, whether felonies or misdemeanors or *both,* are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan. . . . " (Emphasis added) G.S. 15A-926(a).

Where two courts have concurrent jurisdiction of certain offenses, the court first exercising jurisdiction in a particular prosecution obtains jurisdiction to the exclusion of the other. But when it enters a *nol prosequi* it loses jurisdiction and the other court may proceed. 2 Strong, N. C. Index 2d, Criminal Law, § 16, p. 500 (1967).

A charge of reckless driving, of operating an automobile on the highway while under the influence of intoxicating liquor and of assault with an automobile may be properly joined in one indictment as separate counts charging distinct offenses of the same class growing out of the same transaction. *State v. Fields,* 221 N.C. 182, 19 S.E. 2d 486 (1942).

We find that the "driving under the influence" misdemeanor charge and the manslaughter felony charge were based on the same transaction within the meaning of G.S. 7A-271(a)(3), and that therefore the superior court had jurisdiction of both charges and had the right to proceed to the trial on the misdemeanor charge under the joinder exception of this statute, the "original jurisdiction" of the district court having been lost after the *nolle prosequi* was entered in that court. The defendant's assignment of error is overruled.

[2] Defendant also assigns as error the admission of the testimony of the expert witness relative to the alcohol content of the defendant's blood on the grounds that the State failed to establish the chain of custody for the blood samples. In this regard the State's evidence tended to show that Joan Roche, a lab technician at Wake Memorial Hospital, was found by the court to be qualified to take blood samples. She testified that she filled two tubes with blood taken from the unconscious defendant at the request of the Town of Wake Forest Officers Gibson and Coordes and in their presence; she then labeled the tubes as to the name of the defendant, time, date and place. On voir dire hearing Officer Coordes testified that soon thereafter he and Officer Gibson took the blood samples to Memorial Hospital in Chapel Hill for analysis but found no one on duty,

so they returned to the Wake Forest Police Department and, placed the tubes of blood, packed in ice in a plastic cup, in the refrigerator. The refrigerator was in the line of sight of the dispatcher who testified that he saw the officers place the cup therein about 6:30 a.m. and that no one came into the station and approached the refrigerator until about 8:00 a.m. when Police Chief Newsome arrived. Then the blood samples were shown to him by Officer Gibson. The tubes were repacked with ice and taken by Officer Gibson and Chief Newsome and delivered by them to Mr. Boling, a chemist in the laboratory of the Chief Medical Examiner at Chapel Hill. Boling was found by the court to be an expert in the chemical analysis of blood, and he testified that he analyzed the blood delivered to him by the officers; that the blood samples were labeled in the name of Robert Joseph Karbas and that he found .16% alcohol in the blood.

Real evidence, when sufficiently identified, should be freely admitted, subject to the general requirements of relevancy and materiality and with due regard to the danger of unfair prejudice in the particular case and subject also to exclusionary rules grounded upon constitutional principles. 1 Stansbury, N. C. Evidence, § 117 (Brandis rev. 1973). Whether real evidence, the substance sought to be introduced, has passed through several hands to a qualified expert for analysis, there must be "a chain of custody" method of identification. If one link in the chain is entirely missing, the substance cannot be introduced into evidence or made the basis for the test report of an expert. The evidence must not leave to conjecture who had it and what was done with it between the taking and the analysis. The integrity of the substance taken must be shown with reasonable certainty, usually by evidence of proper labeling, care and handling. The "chain of custody" evidence may be supported in appropriate cases by legal inferences: i.e., that (1) a deposit in the mails of a letter properly stamped and addressed was received in due course by the addressee. 2 Stansbury, N. C. Evidence, § 236 (Brandis rev. 1973), and (2) articles regularly mailed are delivered in substantially the same condition in which they are sent. 29 Am. Jur. 2d, Evidence, § 830, p. 922 (1967).

There is no absolute standard of proof. Proof beyond all possibility of doubt is not required, and all possibility of tampering need not be excluded. Anno., 21 A.L.R. 2d 1216 (1952). If all the evidence and relevant legal inferences reasonably

support the conclusion that the substance analyzed is the same as that taken, then the analysis, or the substance analyzed, is admissible into evidence. This determination is made by the trial judge from evidence presented in trial before the jury, or from evidence presented in a voir dire hearing granted on motion by a party or *ex mero motu.* If the trial judge conducts a voir dire hearing, findings of fact or conclusions of law are not required except where substantial issues of fact or questions of law are raised in the hearing. The trial judge determines any preliminary questions of fact and law upon which admissibility depends. The jury determines the credibility, probative force, and weight of all the evidence admitted in the trial. 1 Stansbury, N. C. Evidence, § 8 (Brandis rev. 1973).

In this case we find that the "chain of custody" evidence did not disclose that a link in the chain was missing, that the evidence was sufficient to give the trial judge reasonable assurance that the blood taken from the defendant was the blood analyzed by the chemist, and that his testimony relative to the finding of alcohol in the blood sample was properly admitted.

Finally, defendant urges this Court to adopt the dissent in the case of *Schmerber v. California,* 384 U.S. 757 (1966), and to hold that the taking of the defendant's blood without his knowledge and consent compels him to be a witness against himself in violation of the Fifth Amendment. We feel that we must deny the defendant's invitation to overrule the Supreme Court of the United States.

No error.

Chief Judge BROCK and Judge HEDRICK concur.