676 S.E.2d 564 (2009)
STATE of North Carolina
v.
Charlie Vance RAWLINSON.
No. COA08-585.
Court of Appeals of North Carolina.
May 19, 2009.
*565 Attorney General Roy Cooper, by Special Counsel Jay J. Chaudhuri and Assistant Special Counsel Lindsey L. Deere, for the State.
Irving Joyner, Cary, for Defendant.
McGEE, Judge.
Charlie Vance Rawlinson (Defendant) was indicted by the grand jury in Iredell County on 22 January 2007 on the charges of felony larceny, attaining habitual felon status, larceny chose in action, felony breaking or entering, preparation to commit burglary or other housebreakings, safecracking, and misdemeanor larceny. The trial court purportedly granted the State's motion for joinder pursuant to N.C. Gen.Stat. § 15A-926 (2008), on the grounds that the offenses were "based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." Defendant agreed that the offenses were "all connected in time" and did not object to the joinder of offenses. A jury found Defendant guilty of felony breaking or entering and misdemeanor larceny on 4 October 2007. Defendant admitted his status as an habitual felon. The trial court sentenced Defendant to a term of 80 months to 105 months in prison. The State's evidence at trial tended to show the following.
Cheryl White (White) was working as manager of Queen City Audio, Video and Appliance (the video store) in Mooresville, North Carolina, on 5 February 2005. The video store was located in a former drugstore building and was divided into two areas: the retail area and the manager's office (the office). The retail area was the largest area, and it was located on ground level. The office was located on the left side of the retail area, two or three steps above the retail area. The office had a two-way mirror across the exterior of the office that faced the retail area. The entire retail area could be seen from inside the office, but customers in the retail area could not see inside the office. The office was not open to the public and during normal business hours, the door to the office remained closed, but unlocked. White testified that the video store's safe was located in the office, and that there was a bank deposit bag containing cash and checks stored inside the safe.
White was assisting a customer when she noticed a man, later identified as Defendant, standing alone at the front of the video store. When White's customer decided to make a purchase, White escorted the customer up to the office to obtain rebate information related to the customer's purchase. As White and the customer approached the office, White saw the office door open. White saw Defendant inside the office, standing over White's desk and holding White's purse. White asked Defendant what he was doing in the office, and Defendant replied, "I'm looking for a bathroom." White told Defendant he would not find a bathroom in the office. White testified that she did not take her eyes off Defendant. She said that her close proximity to Defendant and the bright lighting in the video store gave her a good view of Defendant. Defendant then dropped White's purse, walked out of the office, and exited the video store. White locked the office and immediately followed Defendant. White and the customer ran out of the video store but were unable to see Defendant. They did see a black sports utility vehicle speeding out of the parking lot.
White returned to the office and discovered that the safe was pulled loose from the bolts in the desk, was moved forward, and its door was open. White testified the contents of the safe, which included the bank deposit bag and a one-hundred dollar bill, were missing. The bank deposit bag contained checks totaling $7,242.19. Police were called and responded within five minutes. Lieutenant *566 John Brammer (Lt.Brammer) of the Mooresville Police Department investigated the incident.
Jennifer Ibinson (Ibinson) testified that she was an employee at the Cool Cuts Hair Salon, located in the same shopping center as the video store, and was within walking distance of the video store. Ibinson testified that her North Carolina license tag, PWE 4149, was attached to her vehicle on the morning of 5 February 2005. However, when she returned home from work that afternoon, Ibinson noticed her license plate was missing.
Gertrude Knox (Knox) testified that she was employed at the Dollar General store in Kings Mountain, North Carolina in February 2005. The Dollar General contained an office that was not open to the public and that was accessible only through a walkway through the stockroom. A safe containing money was located inside the office. The walls of the office did not reach the ceiling, which made it possible to gain entry by climbing up and over the office walls.
Knox testified that when she entered the Dollar General office on 6 February 2005, she was holding a one-hundred dollar bill, which she placed in her pocket. She used a key to enter the locked office and discovered Defendant standing in front of the safe. Defendant told Knox that he was "[l]ooking for the bathroom" and Knox responded to Defendant that "he wasn't supposed to be back there without permission." Defendant turned to leave the office, but he stopped and attempted to get the one-hundred dollar bill out of Knox's pocket. Defendant tore a piece of the one-hundred dollar bill that was in Knox's pocket. Knox then screamed for help.
Jennifer Tate (Tate), assistant manager at Dollar General, responded to Knox's cry for help. Tate recognized Defendant as a customer from earlier in the day. Tate called 911 and Defendant fled the Dollar General, driving away in a vehicle. The Dollar General was well lit, and neither Knox nor Tate had any difficulty seeing Defendant while he was in the Dollar General.
Corporal Mark Butler (Cpl.Butler) of the Kings Mountain Police Department received Tate's 911 call and responded. Cpl. Butler had received a description of the suspect's vehicle through the 911 dispatch. The vehicle was described as a red Plymouth with North Carolina license tag PWE 4149. Cpl. Butler saw a vehicle matching the description and attempted to stop it. The vehicle initially stopped, but as Cpl. Butler started to exit his vehicle, the suspect drove away. Cpl. Butler continued pursuit in his vehicle until the suspect stopped, exited his vehicle, and ran away on foot. Cpl. Butler chased the suspect on foot, and apprehended him in the back of a Food Lion store. The suspect was later identified as Defendant.
Lt. Brammer learned on 11 February 2005 that the missing license plate stolen from Ibinson's vehicle on 5 February 2005 was recovered by Cpl. Butler as a result of the car chase from the Dollar General on 6 February 2005. Lt. Brammer returned to the video store approximately two weeks after the incident and asked White if she could identify the person who stole funds from the video store safe on 5 February 2005. Lt. Brammer presented White with a six-picture photographic line-up that included Defendant's photograph. When White was shown the photographic line-up, she immediately identified Defendant as the man she had seen in the office of the video store on 5 February 2005.
At the close of the State's evidence, Defendant moved to dismiss the larceny charge. Defendant's motion was denied. Defendant did not present any evidence at trial. A jury found Defendant guilty of felony breaking or entering and misdemeanor larceny. Defendant appeals.

I.
In Defendant's first argument, he contends in part that the superior court lacked subject matter jurisdiction to render judgment on the charge of misdemeanor larceny. We agree.
Though we do not agree with Defendant's specific argument concerning subject matter jurisdiction, it is the duty of this *567 Court to vacate a judgment ex mero motu if we determine subject matter jurisdiction was lacking at the trial level. State v. Webber, ___ N.C.App. ___, ___, 660 S.E.2d 621, 622 (2008). "Like the majority of states, North Carolina requires the State to prove jurisdiction beyond a reasonable doubt in a criminal case." State v. Petersilie, 334 N.C. 169, 175, 432 S.E.2d 832, 835 (1993). The district court has "exclusive, original jurisdiction for the trial of criminal actions ... below the grade of felony, and the same are hereby declared to be petty misdemeanors." N.C. Gen.Stat. § 7A-272 (2007). The superior court may obtain jurisdiction over a misdemeanor charge by direct appeal to the superior court from a conviction in district court. State v. Martin, 97 N.C.App. 19, 22-23, 387 S.E.2d 211, 213 (1990). Such is not the case in this matter. However: "The superior court has jurisdiction to try a misdemeanor charge: ... (3) Which may be properly consolidated for trial with a felony under G.S. 15A-926[.]" Petersilie, 334 N.C. at 175, 432 S.E.2d at 835, quoting N.C. Gen.Stat. § 7A-271(a).
Under N.C.G.S. § 7A-271, the superior court has no jurisdiction to try by indictment a defendant charged with a misdemeanor unless the charges which are the subject of the indictment were initiated by a presentment.
Petersilie, 334 N.C. at 176, 432 S.E.2d at 836 (citations omitted). Therefore, the superior court does not automatically obtain jurisdiction over a misdemeanor simply because it is first charged in superior court by indictment. Pursuant to N.C. Gen.Stat. § 15A-926(a), the superior court may join a misdemeanor to another charge over which the superior court has jurisdiction if they are "based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." N.C. Gen.Stat. § 15A-926(a) (2007).
In the instant case, the State moved to join certain charges for trial, and the trial court allowed joinder of these charges. The State's written motion for joinder included the following file numbers: (1) 05CRS53566, (2) 06CRS11438 and (3) 06CRS11439. The original indictment for 05CRS53566 included one charge of felony larceny, based upon two different theories, N.C. Gen.Stat. § 14-72(a), larceny of goods valued over $1000, and N.C. Gen.Stat. § 14-72(b)(1), larceny from a person. This indictment also included the charge that Defendant had obtained habitual felon status. N.C. Gen.Stat. § 14-7.1 (2007). There was a superceding indictment entered for 05CRS53566, correcting a clerical error. This superseding indictment, however, only included the habitual felon charge, and did not include the felony larceny charge. The original indictment for 06CRS11438 included three charges for larceny of chose in action in violation of N.C. Gen.Stat. § 14-75. The original indictment for 06CRS11439 included one charge of safecracking in violation of N.C. Gen.Stat. § 14-89.1(a). A superseding indictment was entered for 06CRS11438, which included three distinct offenses: (1) larceny of chose in action, (2) felony breaking or entering pursuant to N.C. Gen.Stat. § 14-54(a), and (3) preparation to commit burglary or other housebreakings pursuant to N.C. Gen.Stat. § 14-55. A superseding indictment was entered for 06CRS11439, which included the offenses of safecracking and misdemeanor larceny in violation of N.C. Gen.Stat. § 14-72(a).
The State's motion for joinder was filed on 23 October 2006. This motion was a form motion, AOC-CR-212, and was entitled "Motion and Order for Joinder." This motion and order for joinder, though referencing the three file numbers listed above, only referenced four of the charges included in the superseding indictments for those file numbers in the section entitled "Offense Description": (1) "felony larceny" (which was included in the original indictment but not the superceding indictment), (2) "habitual felon," (3) "larceny chose in action," and (4) "safecracking." The State's motion and order for joinder included the date of offense for each of these charges, and the corresponding statutory references for these alleged crimes in the section entitled "G.S. No." The State failed to include offense descriptions, dates of the offenses or statutory reference for the indicted charges of preparation to commit burglary or other housebreakings, felony breaking or entering, and misdemeanor larceny.
*568 This motion and order for joinder was a form motion, Form AOC-CR-212, which allowed the moving party to submit this one page, two sided form, which included the motion for joinder, and also included a section for the trial court to either grant or deny the motion, thus transforming the motion into an order of the trial court. The record is devoid of any indication that the trial court ever considered the State's 23 October 2006 written motion and order for joinder, as none of the boxes in the "Order" portion of the form were marked to indicate either grant or denial of the motion, and there was no signature of the presiding judge.
At the beginning of the trial on 9 January 2007, the State informed the trial court that Defendant was "charged with felonious larceny under two theories, based on value in excess of a thousand dollars and larceny from a person. He's also charged with three counts of larceny choose [sic] in action, one count of safecracking, and he's also alleged to have achieved the status of habitual felon." The State later stated: "Your Honor, we also filed a motion for Joinder." The trial court responded: "I'm sorry?" The State explained that it wished to "[j]oin the offenses." The State did not specifically indicate to the trial court which offenses it wished to join, and therefore the only offenses brought to the trial court's attention with respect to joinder were felony larceny, habitual felon, larceny chose in action, and safecracking. Defendant's attorney stated that he had no objection to joinder of the offenses. The trial court responded: "All right. Motion is allowed." In an order dated 11 January 2007, which dealt with numerous motions by both the State and Defendant, the trial court stated: "As to the State's motion for Joinder, that motion is HEREBY GRANTED[.]"
The record before us is devoid of any affirmative evidence that the State specifically requested the misdemeanor larceny charge be joined with the felony charges, or that it argued the misdemeanor was appropriate for consolidation with any felony charge pursuant to N.C. Gen.Stat. §§ 7A-271(a) and 15A-926(a). The record is equally devoid of evidence that the trial court specifically granted permission to join the misdemeanor larceny charge to the felony charges. The motion and order for joinder filed by the State on 23 October 2006 made no mention of the misdemeanor larceny charge, in either the "Offense Description" section or the "G.S. No." section of the AOC-CR-212 form. The trial court did not use this 23 October 2006 motion and order for joinder as an order allowing joinder, evidenced by the fact that the box indicating the trial court was granting the State's motion was left unchecked, and the trial judge did not sign the motion and order for joinder.
These problems with the State's written motion for joinder are not dispositive of the issue, as "a joinder motion `need not be written if made at a hearing, and, in the judge's discretion, the motion may be made orally even at the beginning of trial.'" In re R.D.L., ___ N.C.App. ___, ___, 664 S.E.2d 71, 76 (2008) (citations omitted). However, as indicated above, the misdemeanor larceny charge was not addressed in the State's oral presentation of its motion for joinder, and there is nothing in the transcript to indicate the trial court was aware the State wished to join the misdemeanor larceny charge to the felony charges at the time the trial court issued either its oral grant of that motion at the 9 January 2007 hearing, or its written grant of that motion dated 11 January 2007. The trial, which was before a different judge, did not begin until 3 October 2007.
Therefore there is no evidence that the trial court made any determination that the misdemeanor charge was "based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan" in relation to any of the felony charges, as required by N.C. Gen.Stat. § 15A-926(a). Without a proper determination that the misdemeanor charge was appropriate for joinder pursuant to N.C. Gen.Stat. § 15A-926(a), there is no basis for the jurisdictional requirement that the misdemeanor "may be properly consolidated for trial with a felony" as required by N.C. Gen.Stat. § 7A-271(a).
The dissent cites State v. Karbas, 28 N.C.App. 372, 221 S.E.2d 98 (1976), in which the defendant was charged with driving under the influence and manslaughter in a single *569 indictment. These charges arose from an automobile accident the defendant caused, which resulted in a death. It was stipulated at trial that the district court had entered a nolle prosequi with respect to the misdemeanor driving under the influence charge, thereby refusing to prosecute it. Id. The Karbas Court held that the
"driving under the influence" misdemeanor charge and the manslaughter felony charge were based on the same transaction within the meaning of G.S. 7A-271(a)(3), and that therefore the superior court had jurisdiction of both charges and had the right to proceed to the trial on the misdemeanor charge under the joinder exception of this statute, the "original jurisdiction" of the district court having been lost after the nolle prosequi was entered in that court.
Id. at 374, 221 S.E.2d at 100. Unlike Karbas, the charges consolidated in indictment 06CRS11439, safecracking and misdemeanor larceny of a license plate, are not by their very nature clearly "based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." Some factual basis needed to be developed to tie these seemingly, on their face, unconnected charges together. Further, the district court in this case had not "lost" its original jurisdiction by entering a nolle prosequi with respect to the misdemeanor larceny charge. We do not find Karbas controlling on these facts.
The trial court never heard any evidence, nor made any determination that the misdemeanor larceny charge could be consolidated with the safecracking charge, or any other felony. The trial court never made a ruling permitting joinder of the misdemeanor larceny charge with the other charges, and exclusive original jurisdiction for misdemeanors lies with the district court. We therefore hold that the trial court never obtained jurisdiction over the charge of misdemeanor larceny. N.C. Gen.Stat. § 7A-272; N.C. Gen. Stat. § 15A-926(a); State v. Martin, 97 N.C.App. 19, 22-23, 387 S.E.2d 211, 213 (1990). We are compelled to vacate judgment on the misdemeanor larceny conviction, and remand for a new trial consistent with this opinion.
We note that the burden placed upon the State by our holding is slight. In order to meet its jurisdictional burden for joinder of a misdemeanor charge to a felony charge in superior court, the State must merely make the trial court aware of the misdemeanor it seeks to join, and state the basis for its belief that the misdemeanor and felony charges are "based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." Then it is up to the trial court to decide whether the jurisdictional requirement has been met, and whether joinder of the charges is appropriate.
After reviewing the record and transcripts in this case, we hold that the improper "joinder" of the misdemeanor larceny charge does not, however, rise to the level of prejudicial error for Defendant's remaining convictions. With respect to the other two convictions, we hold there is no "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial...." N.C. Gen.Stat. § 15A-1443(a) (2007); State v. Perry, 142 N.C.App. 177, 181-82, 541 S.E.2d 746, 749 (2001). Defendant's conviction for felony breaking and entering and his admission to habitual felon status stand. Because the misdemeanor larceny charge was consolidated with the other charges for judgment, we remand to the trial court for new entry of judgment consistent with this opinion.
We note that the charge of felony breaking and entering was not included in the State's written motion for joinder, nor was the trial court informed at the 9 January 2007 hearing that Defendant was being charged with felony breaking and entering before the trial court granted the State's motion for joinder. However, because the trial court had original jurisdiction over this felony charge, and because Defendant made no objection at trial and has made no argument on appeal that joinder for this offense constituted error, this issue is not before us and we do not address it. N.C.R.App. P. Rules 10(a), 10(b)(1), 28(a) and 28(b)(6); State v. Newman, 308 N.C. 231, 236, 302 S.E.2d 174, 179 (1983).

*570 II.
In Defendant's second argument, he contends the trial court erred in refusing to dismiss the charge of felonious breaking or entering based on insufficiency of the evidence. We disagree.
"Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon." N.C. Gen.Stat. § 14-54(a) (2007). "Thus, `[t]he essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein.'" State v. Brooks, 178 N.C.App. 211, 214, 631 S.E.2d 54, 57 (2006) (quoting State v. White, 84 N.C.App. 299, 301, 352 S.E.2d 261, 262, cert. denied, 321 N.C. 123, 361 S.E.2d 603 (1987)). In order for an entry to be unlawful under N.C. Gen.Stat. § 14-54(a), the entry must be without the owner's consent. See State v. Boone, 297 N.C. 652, 655, 256 S.E.2d 683, 685 (1979). "[A]n entry with consent of the owner of a building, or anyone empowered to give effective consent to entry, cannot be the basis of a conviction for felonious entry under [N.C. Gen.Stat. §] 14-54(a)." Id. at 658, 256 S.E.2d at 687. "However, the subsequent conduct of the entrant may render the consent to enter void ab initio." Brooks, 178 N.C.App. at 214, 631 S.E.2d at 57; see State v. Speller, 44 N.C.App. 59, 60, 259 S.E.2d 784, 785 (1979) (holding that the defendant's actions where he went "into an area not open to the public and remain[ed] hidden there past closing hours made the entry through the front door open for business unlawful.").
Defendant cites Boone, Brooks, and State v. Winston, 45 N.C.App. 99, 262 S.E.2d 331 (1980) in support of his argument that he had implied consent to enter the video store. In Boone, the defendant entered a store that was open to the public during business hours. Boone, 297 N.C. at 653, 256 S.E.2d at 684. The defendant briefly left the store and then returned with three other people. Id. The defendant remained outside while the other three went inside for three to five minutes, and then the defendant and the others left. Id. In Boone, our Supreme Court held that because the defendant entered the store at a time when it was open to the public, his entry was with the consent of the owner and could not serve as the basis for a conviction for felonious entry. Id. at 659, 256 S.E.2d at 687. In Brooks, the defendant and a co-participant entered a law office, a business open to the public, but went into an area of the law office they knew was not open to the public after the co-participant had been told not to return to the premises. Brooks, 178 N.C.App. at 212-13, 631 S.E.2d at 56. Our Court held that
[w]hen [the] defendant entered the reception area of the firm, he did so with implied consent from the firm. However, [the] defendant took action which rendered this consent void ab initio when he went into areas of the firm that were not open to the public so that he could commit a theft[.]
Id. at 215, 631 S.E.2d at 57. Unlike in Brooks, Defendant argues that in the present case, the State failed to produce required evidence that Defendant was aware of the limits of the implied consent or was informed of an express withdrawal of consent to enter the video store office.
In Winston, the defendant entered an office of the Clerk of Superior Court of Cumberland County in the Cumberland County Courthouse in Fayetteville, North Carolina during regular working hours. Winston, 45 N.C.App. at 100, 262 S.E.2d at 332. The office was connected by a corridor to a large hallway, and was located on the first floor of the courthouse. Id. There were no signs indicating that either the corridor or the office were private and not open to the public, while other areas of the courthouse did have such signs informing the public of the private nature of those areas. Id. The office was used to handle adoptions, foreclosures, and other business of the clerk of court which necessarily required the use of the office by members of the general public. Id. at 101, 262 S.E.2d at 333. Our Court held that because the office was open for business to the public when the defendant entered, "[t]he general public, including the defendant, had implied consent and invitation to enter the office at that time." Id.
*571 In the present case, as in Boone, the video store was open to the public, and thus Defendant had implied consent to enter the video store. See Boone, 297 N.C. 652, 256 S.E.2d 683. At issue, however, is whether the video store's office, where the safe was located, was also open to the public so as to extend that implied consent for entry to the office. Our Court considered this issue in its recent opinion In re S.D.R., ___ N.C.App. ___, 664 S.E.2d 414 (2008).
In In re S.D.R., the defendant was brought to the Anson Cooperative Extension Service (the Extension) in Wadesboro, North Carolina as part of a community service and restitution after-school program. Id. at ___, 664 S.E.2d at 417. The defendant was instructed to sit in the Extension's library, which was located directly across from the office of the Extension's director. Id. The director testified that she had seen the defendant sitting in the library, and that when she returned from a brief trip to the restroom, the defendant was standing in the doorway of her office. Id. The director later discovered that cash that had been in her purse was missing. Id.
On appeal, our Court distinguished In re S.D.R. from the facts in Winston. We held that the director's office in In re S.D.R. was not held out to the public in the same way that the clerk's office was in Winston. Id. at ___, 664 S.E.2d at 419.
Although the Extension is a public building that houses a public agency, just as the Cumberland County Courthouse [in State v. Winston] is a public building that houses public agencies, the evidence does not show that [the director's] job functions necessarily require the general public to have access to [the director's] office or that members of the general public use [the director's] office.
Id. The director's office at the Extension was not open to regular foot traffic, and although members of the public occasionally did come into the office, they had to either have an appointment or be specifically invited to enter. Id. at ___, 664 S.E.2d at 419-20. Furthermore, we held that even if the defendant in In re S.D.R., had implied consent to enter the director's office because it was necessary for the general public to have access to that office, the act of stealing cash from the director's purse was sufficient to render that implied consent void ab initio as contemplated by Winston and Boone. Id. at ___, 664 S.E.2d at 420.
In the case before us, we hold that the office in the video store was similar to the director's office in In re S.D.R. See id. In the present case, the office was attached to the retail area of the video store, which was open to the public during regular business hours, and when Defendant entered the video store. Also, members of the general public did sometimes need to enter the office for business purposes. However, like the director's office in In re S.D.R., members of the general public were only permitted entrance into the office when invited and accompanied by an employee of the video store. We hold that the office in the video store was not open to the public and that Defendant did not have implied consent to enter the office. Moreover, even if Defendant had implied consent to enter the office of the video store, Defendant's act of stealing the cash and checks inside the deposit bag rendered that implied consent void ab initio. See id. This argument is without merit.

III.
In Defendant's fourth assignment of error, he contends the trial court committed reversible error in preparing a defective order in denying Defendant's request to suppress the identification of Defendant by White. However, Defendant's argument on appeal is actually that the trial court's order was defective because the trial court failed to make specific findings of fact or conclusions of law pursuant to N.C. Gen.Stat. § 15A-977(f). As Defendant has not assigned error to the trial court's failure to make specific findings of fact and conclusions of law, Defendant's argument is not properly before our Court.
Although findings of fact may be challenged for the first time on appeal, their sufficiency must be properly raised for appellate review. N.C.R.App. P. 10. Failure to assign error to the findings of fact precludes appellate review. N.C.R.App. P. 10(c); see State v. Tadeja, ___ N.C.App. ___, ___, 664 *572 S.E.2d 402, 407 (2008) (holding where "[the] defendant failed to assign error to any of the trial court's findings of fact or conclusions of law these contentions [were] not reviewable."). Defendant's third argument is dismissed.
Defendant's remaining assignment of error was not set out in Defendant's brief and is deemed abandoned. "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R.App. P. Rule 28(b)(6).
No error in part; no prejudicial error in part; vacated and remanded in part for new trial; remanded in part for entry of judgment.
Judge GEER concurs.
Judge BRYANT concurs in part and dissents in part with a separate opinion.
BRYANT, Judge, concurring in part, dissenting in part.
I fully concur in the majority opinion as to Issues II and III. However, because I believe the Superior Court acquired subject matter jurisdiction over the misdemeanor offense properly joined to another felony offense over which the Superior court had original jurisdiction, I respectfully dissent from the portion of the majority opinion vacating the misdemeanor larceny conviction.
Under the North Carolina General Statutes, section 7A-271(a)(3) grants jurisdiction to a Superior Court to try a misdemeanor "[w]hich may be properly consolidated for trial with a felony under G.S. 15A-926." N.C. Gen.Stat. § 7A-271(a)(3) (2007). Under N.C. Gen.Stat. § 15A-926,
Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan.
N.C. Gen.Stat. § 15A-926(a) (2007). "Where two courts have concurrent jurisdiction of certain offenses, the court first exercising jurisdiction in a particular prosecution obtains jurisdiction to the exclusion of the other." State v. Karbas, 28 N.C.App. 372, 374, 221 S.E.2d 98, 100 (1976).
The majority, citing In re R.D.L. ___ N.C.App. ___, 664 S.E.2d 71 (2008), acknowledges that a written motion for joinder is not required. Nevertheless, the majority states there is no "affirmative evidence that the [S]tate specifically requested the misdemeanor larceny charge be joined with the felony charges," nor that the court "specifically granted permission to join the misdemeanor to the felony charges". (Emphasis added). By this statement, the majority would impose a specificity requirement for the movant and for the trial court that is not otherwise mandated by statute or case law. I disagree with such a requirement.
In the instant case, defendant was the subject of a two-count indictment in 06CRS11439: Count I charged Safecracking, a felony under G.S. 14-89.1; and Count II charged misdemeanor larceny under G.S. 14-72(a).[1] The facts as alleged show the offenses set out in 06CRS11439, along with other offenses listed in additional indictments, were based on a series of transactions constituting parts of a single scheme. Because the misdemeanor larceny was joined in the indictment to a charge of felony safecracking over which the superior court had original jurisdiction, N.C.G.S. § 7A-271(a)(3) gave the trial court jurisdiction to consolidate the misdemeanor for trial with the felony.
Once jurisdiction over the misdemeanor was established in the superior court, it was within the discretion of the trial court whether to grant the state's motion for joinder of all pending charges set out in the indictments, including those referenced by 06CRS11439. Thereafter, the trial court granted joinder and the record shows defendant had no objection to joinder of the offenses for trial. The jury heard evidence and returned verdicts on those charges.
*573 I submit that here, where subject matter jurisdiction was never exercised by the district court, the superior court had jurisdiction over the misdemeanor larceny from the moment the grand jury returned true bills of indictment on the charges in 06CRS11439, as they were properly based on the same transaction. Therefore, joinder was not error and the verdict and judgment on misdemeanor larceny should be affirmed. See Karbas, 28 N.C.App. 372, 221 S.E.2d 98 (finding a misdemeanor charge and a felony charge "were based on the same transaction within the meaning of G.S. 7A-271(a)(3), and that therefore the superior court had jurisdiction of both charges and had the right to proceed to the trial on the misdemeanor charge under the joinder exception of this statute" and overruling the defendant's assignment of error based on lack of jurisdiction).
For the foregoing reasons, I respectfully dissent from the majority opinion and would affirm the judgment of the trial court as to misdemeanor larceny.
NOTES
[1] It does not appear that criminal process was ever initiated against defendant in the District Court.