DIETZ, Judge.
*392 Petitioner Maurice Burris was involved in a car accident on 5 March 2013. Emergency personnel removed him from the driver's side of his car and placed him on a stretcher. A law enforcement officer noticed a strong odor of alcohol on Burris's breath. When the officer asked Burris how much he had to drink, Burris responded, "quite a bit." The officer later charged Burris with the implied-consent offense of driving while impaired.
Burris ultimately refused the officer's request to submit to a voluntary blood draw at the hospital after being informed of his implied-consent rights and the consequences of refusing to comply.
*393 The North Carolina Division of Motor Vehicles revoked Burris's driver's license based on his refusal to voluntarily submit to a blood draw, finding that Burris was charged with an implied-consent offense; that the arresting officer had reasonable grounds to believe Burris had committed such an offense; that the officer notified Burris of his rights under N.C. Gen.Stat. § 20-16.2(a) ; and that Burris willfully refused to submit to a chemical analysis. Burris appealed to the trial court and the trial court ordered the DMV to rescind its revocation, holding that, because law enforcement immediately obtained a warrantless, involuntary blood draw after Burris refused to voluntarily submit, Burris's refusal was not "willful."
As explained below, the trial court's reasoning conflicts with this Court's precedent. A willful refusal occurs when a defendant purposefully makes a conscious choice not to submit to a chemical analysis. See Seders v. Powell, 298 N.C. 453, 461, 259 S.E.2d 544, 550 (1979). There is no requirement that, in order to be a "willful refusal," the refusal actually frustrate law enforcement's ability to *887 obtain the chemical analysis. Here, although law enforcement compelled a warrantless, involuntary blood draw shortly after Burris refused to voluntarily submit, the DMV's findings support its conclusion that Burris willfully refused to voluntarily submit to the test.
We also reject Burris's alternative grounds for challenging the DMV's license revocation decision. The DMV's findings are supported by the record and those findings, in turn, support its conclusions of law. Accordingly, we reverse the trial court's order.
Facts and Procedural History
On 5 March 2013, Officer J.R. Ewers received a report of a car accident in Gastonia. When Ewers arrived at the scene, EMS personnel were attending to Petitioner Maurice Burris, who had been placed on a stretcher. EMS personnel informed Ewers that they had removed Burris from the driver's side of his vehicle. Once Ewers began speaking with Burris at the accident scene, he noticed a strong odor of alcohol on Burris's breath, and when Ewers asked Burris how much he had to drink, Burris responded, "quite a bit." Ewers was unable to conduct a field sobriety test because EMS needed to transport Burris to the hospital.
Officer Ewers arrived at the hospital shortly after Burris. While Burris was receiving medical care in an emergency room, Ewers again asked him how much he had to drink that night, and Burris again responded, "quite a bit." Ewers still detected a strong odor of alcohol on Burris's breath.
*394 Based on these observations, Officer Ewers charged Burris with driving while impaired-an implied-consent offense. Ewers then orally advised Burris of his rights under N.C. Gen.Stat. § 20-16.2, a statute stating that any person who drives a vehicle on a public highway consents to chemical analysis if charged with an implied-consent offense. Ewers also held a written copy of these rights close to Burris's face so Burris could read them while he lay in the hospital bed. After Burris told Ewers that he understood these rights, Ewers asked Burris to submit to a blood test. Burris responded that he would not give his blood. Ewers then asked Burris if he was sure, and Burris replied that he did not want to submit to the blood test. Ewers marked Burris's response as a "willful refusal" on the applicable form. Shortly after, Ewers compelled Burris to provide a warrantless blood sample based on his conclusion that Burris would no longer be at the hospital by the time he could return with a warrant.
On 25 March 2013, the North Carolina Division of Motor Vehicles notified Burris that it was revoking his driver's license for willfully refusing to submit to a chemical analysis. Burris contested this revocation at a DMV hearing on 19 March 2014. The DMV upheld the revocation, concluding that all the statutory prerequisites for revocation were met-namely, that Burris was charged with an implied-consent offense; that Officer Ewers had reasonable grounds to believe Burris had committed such an offense; that Burris was notified of his rights under N.C. Gen.Stat. § 20-16.2(a) ; and that Burris willfully refused to submit to a chemical analysis.
Burris appealed the DMV's decision to the trial court, which ordered the DMV to rescind its revocation of Burris's license. The court concluded that the DMV hearing record failed to show that Burris willfully refused to submit to a chemical analysis. It reasoned that Burris "made a decision to refuse the 'request' for a blood draw, weighing the possible consequences as advised by the officer, but without the additional relevant consideration that his blood draw could be compelled without his consent." The court then reasoned that "[h]ad [Burris] been furnished with this additional information, there is a strong likelihood that he would have made a different decision. The 'choice' offered by the officer in this case was illusory." DMV timely appealed the trial court's order.
Analysis
I. DMV's Challenge to the Trial Court Decision
On appeal, DMV argues that the trial court erred because the DMV's findings of fact support its conclusion that Burris willfully *395 refused to submit to a chemical analysis. As explained below, we agree and therefore reverse the trial court's order.
"[O]n appeal from a DMV hearing, the superior court sits as an appellate court, *888 and no longer sits as the trier of fact. Accordingly, our review of the decision of the superior court is to be conducted as in other cases where the superior court sits as an appellate court. Under this standard we conduct the following inquiry: (1) determining whether the court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." Johnson v. Robertson, 227 N.C.App. 281, 286-87, 742 S.E.2d 603, 607 (2013) (quotations omitted).
A superior court's review of a DMV license revocation decision is "limited to whether there is sufficient evidence in the record to support the [DMV's] findings of fact and whether the conclusions of law are supported by the findings of fact and whether the [DMV] committed an error of law in revoking the license." N.C. Gen.Stat. § 20-16.2(e).
Here, the trial court ordered DMV to rescind its revocation on the grounds that Burris did not willfully refuse to submit to a chemical analysis. Specifically, the trial court held that "the record fails to support the Petitioner willfully refused since Petitioner was unaware he had a choice to take or refuse the test." The court further explained that "Petitioner was read his rights under N.C.G.S. 20-16.2 and refused; however, blood was compelled immediately after the refusal. Therefore, there is a strong likelihood that Petitioner did not understand his rights with regard to the reality that he did not have a choice not to take the test."
The trial court's reasoning is erroneous. As the trial court acknowledged, the DMV found that Ewers read Burris his rights under the implied-consent laws, including his right to refuse to submit to a chemical analysis. The DMV also found that, after being informed of these rights, Burris refused to voluntarily submit to a blood draw. These findings are supported by the record. At the revocation hearing, Ewers testified that he read Burris his implied-consent rights and held a form listing these rights near Burris's face so Burris could read them. Ewers also testified that Burris told him that he understood these rights, then refused to submit to a blood test when asked.
The trial court rejected the DMV's finding of willful refusal not because it believed the DMV's findings were unsupported by the evidence, but because the court believed Burris's choice to refuse was "illusory." The court explained that, because law enforcement immediately compelled an involuntary blood draw for chemical analysis after *396 Burris refused a voluntary blood draw, " there is a strong likelihood that Petitioner did not understand his rights with regard to the reality that he did not have a choice not to take the test."
Our precedent does not support this reasoning. A willful refusal occurs when a person purposefully makes a conscious choice not to submit to a chemical analysis. See Seders v. Powell, 298 N.C. at 461, 259 S.E.2d at 550. Thus, "[a] finding that a driver 'did refuse' to take the test is equivalent to a finding that the driver 'willfully refused' to take the test." Mathis v. North Carolina Div. of Motor Vehicles, 71 N.C.App. 413, 416, 322 S.E.2d 436, 438 (1984).
Importantly, there is no requirement that, in order to be a "willful refusal," the refusal must frustrate law enforcement's ability to obtain the chemical analysis. That is what the trial court appears to have concluded by stating that one cannot "willfully refuse" a chemical test if "blood was compelled immediately after the refusal." What matters is whether the person was given the choice to voluntarily submit to the test and, after being given that choice, chooses not to voluntarily submit. At that point, the person has willfully refused. The fact that law enforcement might then conduct an involuntary chemical analysis has no bearing on the analysis of the request for a voluntary one. Indeed, one of the implied-consent rights that must be explained to a person from whom law enforcement request chemical analysis is that, even if the person were to refuse to submit to a chemical test, he might still be compelled to do so. See N.C. Gen.Stat. § 20-16.2(a)(1). The DMV found that Officer Ewers informed Burris of this fact and the record supports that finding. Accordingly, the trial court erred by rejecting the DMV's finding of willful refusal.
II. Burris's Alternative Arguments
Burris asserts several alternative arguments that were not accepted by the trial *889 court but would support reversal of the DMV's revocation order. As explained below, under the narrow standard of review applicable to appeals from license revocation hearings, we must reject these arguments.
Burris first contends that the DMV erred in concluding that Officer Ewers had reasonable grounds to believe that Burris committed an implied-consent offense as required by N.C. Gen.Stat. § 20-16.2(a) because Ewers never observed Burris driving a car. We disagree. The DMV's conclusion is supported by its factual findings that EMS personnel informed Ewers that Burris was removed from the driver's side of his vehicle; that Ewers observed a strong odor of alcohol on Burris's breath *397 at the accident scene; and that, on two separate occasions, Burris told Ewers that he had "quite a bit" to drink. See Steinkrause v. Tatum, 201 N.C.App. 289, 293, 689 S.E.2d 379, 381-82 (2009). These factual findings are taken directly from Officer Ewers's testimony at the revocation hearing and are therefore supported by the record.
Burris next contends that the DMV erred in concluding that Burris was given notice of his implied-consent rights as required by N.C. Gen.Stat. § 20-16.2(a). Specifically, Burris argues that any notice he may have received was inadequate because he was lying in a hospital bed when Ewers read Burris his implied-consent rights and Ewers took only one minute to do so. Again, we disagree.
The DMV's conclusion that Burris was properly notified of his implied-consent rights is supported by its factual findings that Ewers read these rights to Burris and held a form containing these rights near Burris's face so Burris could read them. See State v. Carpenter, 34 N.C.App. 742, 744, 239 S.E.2d 596, 597 (1977). These factual findings are supported by the record. At the DMV hearing, Ewers testified that he read Burris his rights and held the rights form near Burris's face. Burris's argument that one minute is not enough time to properly read the implied-consent rights-which consist of only seven sentences-is a challenge to the DMV's factual finding that Officer Ewers read Burris those rights, and that finding is supported by the record and is thus conclusive on appeal.
Burris also asserts several constitutional arguments on appeal, including that the involuntary blood draw violated his Fourth Amendment rights and that his license revocation violates his due process and double jeopardy rights under the Fifth and Fourteenth Amendments.
Burris's due process and double jeopardy arguments are not preserved for appellate review because Burris never raised these issues at the DMV hearing or on appeal to the trial court. See State v. Waddell, 130 N.C.App. 488, 503, 504 S.E.2d 84, 93 (1998).
Burris raised his Fourth Amendment argument at the DMV hearing, but that argument is meritless. Even if law enforcement's warrantless, involuntary blood draw violated the Fourth Amendment, that allegedly unconstitutional blood draw happened after Burris willfully refused the voluntary blood draw. Moreover, the officer's determination that there were reasonable grounds to conclude Burris was driving while impaired were not based on the results of that subsequent blood draw. Thus, the subsequent warrantless blood draw, even if unconstitutional, has no impact on the outcome of this civil license revocation hearing.
*398 Cf. Combs v. Robertson, --- N.C.App. ----, 767 S.E.2d 925, 926 (2015) ; Hartman v. Robertson, 208 N.C.App. 692, 698, 703 S.E.2d 811, 816 (2010) ; Quick v. North Carolina Div. of Motor Vehicles, 125 N.C.App. 123, 127, 479 S.E.2d 226, 228 (1997).
Conclusion
For the reasons discussed above, we reverse the trial court's order.
REVERSED.
Judges HUNTER, JR. and DILLON concur.