McGEE, Chief Judge.
The North Carolina Division of Motor Vehicles ("DMV"), by and through its Commissioner Kelly J. Thomas, (hereinafter, "Respondent") appeals the reversal of a license revocation based on willful refusal to submit to a chemical analysis. We reverse.
I. Background
Trooper Bryan Phillips ("Trooper Phillips") of the North Carolina State Highway Patrol ("NCSHP") set up a drivers' license checkpoint on Wrightsville Avenue in New Hanover County around 12:30 a.m. on 27 September 2014 after receiving authorization from his immediate supervisor. At approximately 1:00 a.m., a vehicle driven by Whitney Ann Cook ("Cook") approached the checkpoint. The driver's side window of Cook's vehicle was "already [rolled] down." Cook "automatically looked drunk" to Trooper Phillips. Based on his observation, Trooper Phillips asked Cook to put the vehicle in park and hand over her drivers' license, which she did. Trooper Phillips observed that Cook's "eyes were red and glassy" and noticed "[a] [m]oderate odor of alcohol coming from her breath as [he] was talking to her." When Trooper Phillips asked Cook how much alcohol she had consumed, Cook "stated [she] ha[d] not had anything."
Trooper Phillips asked Cook to submit to an Alcosensor portable breath test. According to Trooper Phillips, Cook "barely put her lips around the mouthpiece [of the instrument] and in [his] opinion ... she pretended to be blowing through the hollow straw.... [S]he would never fully blow through the instrument.... [S]he told [Trooper Phillips] she was trying."
After three failed attempts to administer the breath test, Trooper Phillips asked Cook to step out of her vehicle. They walked to the shoulder of the road, where Trooper Phillips conducted field sobriety tests, including the horizontal gaze nystagmus ("HGN") and the one-leg stand test. Trooper Phillips observed that Cook exhibited six out of six signs of intoxication during the HGN test. Trooper Phillips did not ask Cook to perform the walk and turn test "due to the traffic volume [and] the location where [they] were on the shoulder of the road." Trooper Phillips then conducted the one-leg stand test. Cook "exhibited three of the four clues [of intoxication]" during that test. After three separate attempts at the one-leg stand test, Trooper Phillips arrested Cook for driving while impaired and transported her to the New Hanover Detention Facility ("NHDF"). During the drive to NHDF, Trooper Phillips said Cook asked him if he knew "that her boyfriend [was] a trauma doctor at the [local] hospital ... [and that her boyfriend] would have to work on [Trooper Phillips] in case [he] got a gun shot and it hit a bone." Cook told Trooper Phillips he "was being aggressive toward her[,]" "scared her[,]" and "was intimidating."
After arriving at NHDF, Trooper Phillips notified Cook of her implied-consent rights, pursuant to N.C. Gen. Stat. § 20-16.2(a), both orally and in writing. Cook refused to sign a copy of the implied-consent rights at approximately 1:50 a.m. However, Cook called her boyfriend at 2:00 a.m. and asked that he come to NHDF to serve as her witness.[1] Although Trooper Phillips was only required, pursuant to N.C.G.S. § 20-16.2(a)(6), to observe a thirty-minute waiting period between notifying Cook of her implied-consent rights and administering a breath test, he waited until her boyfriend arrived at 2:55 a.m.
Trooper Phillips asked Cook to submit to a breath test at 3:00 a.m. Trooper Phillips, a certified chemical analyst, explained to Cook the testing procedure and that the instrument was "designed to take a deep lung sample" and thus required a "long and continuous" blow. Cook made three attempts to provide a sufficient breath sample on the first test ticket before the instrument timed out. Trooper Phillips testified Cook "was doing ... just the same thing like she did on the roadside. She would just blow through and then she would stop, blow through and stop." Trooper Phillips reset the instrument and gave Cook another opportunity to submit a breath sample. Cook made three failed attempts on the second test ticket. Trooper Phillips requested a third test ticket at 3:15 a.m. Cook made two failed attempts on the third test ticket, including one attempt in which it appeared to Trooper Phillips that she "got really close to [providing a sufficient] breath sample [but] then stopped." After Cook provided a second insufficient breath sample on the third test ticket, Trooper Phillips formed the opinion that Cook was willfully refusing to submit to a chemical analysis and marked the ticket as "test refused." Trooper Phillips testified Cook never informed him of any medical reason that would prevent her from providing a breath sample, and she appeared "fully capable" of complying with the breath test.
According to Trooper Phillips, after Cook was marked as having willfully refused the third breath test, Cook's boyfriend asked about the possibility of administering a blood test. Trooper Phillips informed him that it was within the officer's discretion to choose which type of chemical analysis to perform, but that Cook was free to seek a blood test on her own after her release. Cook testified she "asked for a blood test several times ... [and Trooper Phillips] told [her she would] have to pay for it. I told him that was fine. Whatever I had to do to get a blood test I would do it." However, both Cook and her boyfriend testified that, by the time Cook was released around 6:30 a.m., they believed a blood test would no longer be of any use because of the amount of time that had passed since Cook's arrest and "the time of process through the emergency room."
Cook was notified by letter dated 31 October 2014 that her driving privilege was scheduled for a one-year suspension, pursuant to N.C. Gen. Stat. § 20-16.2, as a result of her willful refusal to submit to a chemical analysis. Cook requested a hearing before the DMV and an administrative hearing was scheduled for 8 January 2015. Neither Cook nor her attorney appeared at the 8 January hearing. Following Cook's failure to appear, DMV Hearing Officer S. Weston ("Officer Weston") entered an order sustaining the revocation of Cook's driving privilege.
After entry of the 8 January 2015 order, counsel for Cook contacted Officer Weston and indicated he failed to appear due to a scheduling error by his assistant. Counsel requested and was granted a new hearing. Officer Weston rescinded the prior order and scheduled a new hearing date for 5 February 2015. At the 5 February hearing, Officer Weston heard testimony from Trooper Phillips, Cook, and Cook's boyfriend. The same day, Officer Weston entered an order making findings of fact and conclusions of law, and upholding the revocation of Cook's driving privilege based on her willful refusal to submit to a chemical breath analysis.
Cook filed a complaint and motion for a temporary restraining order and preliminary injunction ("the complaint") in New Hanover Superior Court on 12 February 2015, seeking review of Officer Weston's order. The complaint asserted that "[t]he facts and circumstances surrounding the determination made by [Officer Weston] and the DMV in this matter are insufficient to support a finding that [Cook's] refusal was willful under the law." The trial court granted Cook's request to temporarily restrain the DMV from revoking her driving privilege pending a hearing on the matter.
The matter came on for hearing on 4 April 2016 before Judge W. Allen Cobb, Jr. The trial court heard arguments from both parties. Judge Cobb entered an order on 7 April 2016 finding that (1) there was insufficient evidence in the record to support Officer Weston's findings of fact; (2) the findings of fact in Officer Weston's order did not support the conclusions of law; (3) the DMV erred as a matter of law in revoking Cook's driving privilege; and (4) Cook did not willfully refuse to submit to a chemical analysis on the date of her arrest. The court ordered that Cook's "license [be] reinstated, effective upon notice to be mailed to [Cook] by Respondent pursuant to [N.C.G.S.] § 20.48." Respondent appeals.
II. Reversal of Respondent's Decision
Respondent contends the trial court erred in reversing Respondent's decision suspending Cook's driving privilege because there was sufficient evidence in the record to support Officer Weston's findings of fact and, in turn, those findings of fact supported Officer Weston's conclusions of law.
A. Standard of Review
[O]n appeal from a DMV hearing, the superior court sits as an appellate court, and no longer sits as the trier of fact. Accordingly, [this Court's] review of the decision of the superior court is to be conducted as in other cases where the superior court sits as an appellate court. Under this standard we conduct the following inquiry: (1) determining whether the [trial] court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.
Burris v. Thomas , --- N.C. App. ----, ----, 780 S.E.2d 885, 887-88 (2015) (citation and quotation marks omitted). In the present case, Respondent does not dispute, and we agree, that the trial court exercised the proper scope of review. See Johnson v. Robertson , 227 N.C. App. 281, 287, 742 S.E.2d 603, 607 (2013) (finding trial court exercised correct scope of review merely by stating standard set forth in N.C. Gen. Stat. § 20-16.2(e) ). Thus, the question presented for this Court's consideration is whether the trial court properly exercised that scope of review. For the reasons discussed below, we conclude it did not.
B. Analysis
1. Superior Court Review of DMV Decision
A person whose license has been revoked on the basis of willful refusal to submit to a chemical analysis may request a DMV hearing. See N.C. Gen. Stat. § 20-16.2(d) (2015). Such hearing is "limited to consideration of whether:"
(1) The person was charged with an implied-consent offense or the driver had an alcohol concentration restriction on the drivers [sic] license pursuant to G.S. 20-19 ;
(2) A law enforcement officer had reasonable grounds to believe that the person had committed an implied-consent offense or violated the alcohol concentration restriction on the drivers license;
(3) The implied-consent offense charged involved death or critical injury to another person, if this allegation is in the affidavit;
(4) The person was notified of the person's rights as required by subsection (a); and
(5) The person willfully refused to submit to a chemical analysis.
Id. N.C.G.S. § 20-16.2(d)(3) is irrelevant in the present case because, as Officer Weston noted, "[t]he implied-consent offense charged did not involve death or critical injury to another person." Officer Weston concluded the conditions set forth in N.C.G.S. §§ 20-16.2(d)(1), (2), (4) and (5) were met and thus sustained the revocation of Cook's license. See N.C.G.S. § 20-16.2(d) ("If the [DMV] finds that the [relevant] conditions specified in this subsection are met, it shall order the revocation sustained.").
"If the revocation for a willful refusal is sustained after the [DMV] hearing, the person whose license has been revoked has the right to file a petition in the superior court district ... where the charges were made, within 30 days thereafter for a hearing on the record." N.C. Gen. Stat. § 20-16.2(e) (2015). In reviewing a DMV decision upholding a license revocation based on willful refusal, the superior court's review is "limited to [deciding] whether there is sufficient evidence in the record to support the [DMV's] findings of fact and whether the conclusions of law are supported by the findings of fact and whether the [DMV] committed an error of law in revoking the license." Id.
Cook's complaint in superior court did not specifically challenge any of Officer Weston's findings of fact. The complaint did appear to challenge two of Officer Weston's conclusions of law: (1) that "Cook did willfully refuse to submit to a chemical analysis of her breath[;]" and (2) that "Trooper Phillips had reasonable grounds to believe [Cook] had committed an implied-consent offense." However, in the order from the 4 April 2016 hearing, the trial court states in its finding of fact 1, that Cook "only contested the issue of whether [she] willfully refused to submit to chemical analysis [pursuant to N.C.G.S. § 20-16.2(d)(5) ]." In its finding of fact 2, the trial court explicitly found that Cook "did not contest [Officer Weston's] findings or conclusions ... [made pursuant to N.C.G.S.] § 20-16.2(a), (d)(1), (2), and (4)."
Although Respondent submits that before the trial court, Cook "challenged [both] the Findings and Conclusions as they relate[d] to the willfulness of her refusal[,]" the record before us does not disclose which, if any, specific factual findings Cook may have challenged as "relate[d] to the willfulness of her refusal."[2] See In re P.M. , 169 N.C. App. 423, 424, 610 S.E.2d 403, 404 (2005) (observing that findings of fact not specifically challenged are binding on appeal). After noting in its order that Cook "only contested the issue" of the willfulness of her refusal, the trial court included the following parenthetical: "(See § 20-16.2(d)(5) )[.]" That statutory provision relates to the conclusion of law that a person willfully refused to submit to a chemical analysis. It therefore appears, based on the trial court's order, that Cook's only argument at the superior court hearing was a challenge to Officer Weston's conclusion of law that Cook "willfully refused to submit to a chemical analysis."
Because it does not appear from Cook's complaint or the trial court's order that Cook specifically challenged any of Officer Weston's findings of fact, the sole task of the trial court was to determine whether Officer Weston's findings of fact, taken as true, were sufficient to support a conclusion of law that Cook willfully refused to submit to a chemical analysis, and whether the DMV erred as a matter of law in revoking Cook's license. See State v. Johnson , 225 N.C. App. 440, 444, 737 S.E.2d 442, 445 (2013) (noting that where a party only challenges certain conclusions of law, the appellate court "consider[s] any challenge to the other conclusions abandoned[.]" (citing N.C.R. App. P. 28(a) ); Hartman v. Robertson , 208 N.C. App. 692, 694, 703 S.E.2d 811, 813 (2010) ("Where no exception is taken to a finding of fact ..., the finding is presumed to be supported by competent evidence and is binding on appeal." (citation and quotation marks omitted)).
After finding that Cook "only contested [Officer Weston's conclusion of law that she] willfully refused to submit to [a] chemical analysis" (emphasis added), the trial court then made the generalized statements that "[t]here [was] insufficient evidence in the record to support the findings of fact of [Officer Weston's] decision;" "[t]he conclusions of law of [Officer Weston's] decision [were] not supported by the findings of fact;" and "[the DMV] committed an error of law in revoking [Cook's] license to drive a motor vehicle [.]" The court did not specify which of Officer Weston's twenty-one findings of fact were challenged by Cook and that the court considered unsupported by sufficient evidence. See Combs v. Robertson , 239 N.C. App. 135, 138, 767 S.E.2d 925, 928 (2015) (holding trial court erred in reversing DMV's final agency decision "because the agency record plainly contain[ed] sufficient evidence to support the findings of fact[,]" and noting that "the trial court made a general statement that there was 'insufficient evidence in the record to support the Findings of Fact,' but did not specify which of [the] DMV's forty-six findings of fact was not supported by sufficient evidence."). Additionally, despite having explicitly found that Cook challenged only one of Officer Weston's conclusions of law (i.e. , that she willfully refused to submit to a chemical analysis), the court then found, without further explanation, that "none" of Officer Weston's conclusions of law were supported by the findings of fact. Finally, the trial court offered no insight into its finding that the DMV committed an error of law in revoking Cook's license, nor did it explain the reasoning behind its ultimate finding that Cook "did not willfully refuse to submit to [a] chemical analysis." Cf. Burris , --- N.C. App. at ----, 780 S.E.2d at 888 (observing that, where trial court found insufficient evidence petitioner willfully refused to submit to a chemical analysis, the court provided further explanation (although erroneous) regarding the reasoning for its conclusion). In essence, the trial court merely recited the applicable scope of review. See Brunson v. Tatum , 196 N.C. App. 480, 484, 675 S.E.2d 97, 100 (2009) (holding that when a trial court "sit[s] as an appellate court to review an administrative agency's decision, [it] must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review ." (citation and quotation marks omitted) (emphasis added)).
Insofar as the trial court "applied" its scope of review, the court contradicted its initial determination that the only question presented for its consideration was whether the unchallenged findings of fact supported the single conclusion of law that Cook willfully refused to submit to a chemical analysis. Because we find ample evidence in the record supporting Officer Weston's conclusion that Cook willfully refused to submit to a chemical analysis, we conclude the trial court did not properly exercise the scope of review set forth in N.C.G.S. § 20-16.2(e).
2. Willful Refusal
Under G.S. 20-16.2, a willful refusal occurs where a motorist: (1) is aware that he has a choice to take or to refuse to take the test; (2) is aware of the time limit within which he must take the test; (3) voluntarily elects not to take the test; and (4) knowingly permits the prescribed thirty-minute time limit to expire before he elects to take the test. The purpose of the statute is fulfilled when the motorist is given the option to take or refuse to take the test after being informed of his statutory rights.
Powers v. Tatum , 196 N.C. App. 639, 647-48, 676 S.E.2d 89, 95 (2009) (citation and internal citations omitted); see also Burris , --- N.C. App. at ----, 780 S.E.2d at 888 ("A willful refusal occurs when a person purposefully makes a conscious choice not to submit to a chemical analysis.... What matters is whether the person was given the choice to voluntarily submit to the test and, after being given that choice, chooses not to voluntarily submit. At that point, the person has willfully refused." (internal citation omitted)). A person "may [willfully] refuse [a] test by his deeds as well as his words." Rice v. Peters , 48 N.C. App. 697, 701, 269 S.E.2d 740, 742 (1980) (citation omitted) (emphasis added) (finding facts were sufficient to show willful refusal, where "officer read petitioner his statutory rights two times and was drowned out on the third reading by petitioner's loud and boisterous speech. Petitioner was informed he was being marked down as a refusal and he thereafter gave no indication that he was willing to cooperate."); see also Steinkrause v. Tatum , 201 N.C. App. 289, 295, 689 S.E.2d 379, 383 (2009) ("Obviously, one may refuse [a] test by inaction as well as by words." (citation and quotation marks omitted) (emphasis added)). This Court has held that "[f]ailure to follow the instructions of the breathalyzer operator is an adequate basis for the [trier of fact] to conclude that [a] petitioner willfully refused to submit to a chemical analysis." Tedder v. Hodges , 119 N.C. App. 169, 175, 457 S.E.2d 881, 885 (1995) (holding trial court's findings supported conclusion that petitioner willfully refused test, where "petitioner was informed of his rights regarding chemical analysis, petitioner indicated he would submit to the test, and petitioner blew into the machine five or six times but failed to give a sufficient sample for analysis." Id. at 177, 457 S.E.2d at 886.
3. Unchallenged Findings of Fact
In the present case, numerous unchallenged findings of fact supported Officer Weston's conclusion of law that Cook willfully refused to take a breath test, including the following:
9. Trooper Phillips provided [Cook] with her chemical rights both orally and in writing at 1:50 a.m. [Cook] refused to sign the chemical rights form;
....
12. On September 27, 2014 at 3:00 a.m. Trooper Phillips requested a breath sample for chemical analysis. Trooper Phillips explained the testing procedure and the requirements for a long continuous blow. [Cook] approached the instrument and blew and stopped. She performed in this manner three (3) times on the test ticket. Trooper Phillips reset the instrument. [Cook] approached the instrument and performed exactly as she performed on the first ticket. [Cook] would expel some air and stop. Each time the instrument would register an insufficient sample. Trooper Phillips reset the instrument and allowed two (2) additional opportunities.... [Cook] almost provided a sufficient sample as gaged [sic] by the graph on one occasion. The two (2) opportunities on the third test ticket both resulted in insufficient samples;
13. Trooper Phillips formed the opinion that [Cook] was willfully refusing to submit to [a] chemical analysis and marked the third test ticket as a refusal. Trooper Phillips based his opinion on [his] twelve (12) years of law enforcement working with impaired drivers, his observations of [Cook's] actions in the chemical analysis room, [Cook's] spontaneous remarks of "I just got this job[,]" and the results of the bar graph showing a puff of air and then stopping each time;
....
16. [Cook] provided testimony that she had a neurological condition. Trooper Phillips testified [Cook] did not inform him of any medical issues during [the] chemical analysis. Hearing Officer [Weston] ... d[id] not find any evidence submitted into the record that any potential neurological condition would prevent [Cook] from providing a sufficient breath sample for chemical analysis;
17. Hearing Officer [Weston] finds an ongoing theme of reluctance to cooperate with the established procedures.... [Cook] failed to cooperate and provide a breath sample for the portable breath test. [Cook] refused to sign the chemical rights form. Finally, [Cook] refused to submit to [a] chemical analysis by providing a sufficient breath sample; [and]
18. Hearing Officer [Weston] finds ... Cook [chose] ... to provide a puff of air each time instead of a long continuous blow. [Cook] failed to follow the instructions provided by Trooper Phillips to secure a sufficient breath sample for chemical analysis[.]
The record does not indicate that, in seeking review by the trial court, Cook challenged Officer Weston's findings that (1) she was given multiple opportunities to provide a breath sample but never gave a valid sample; (2) Trooper Phillips repeatedly explained the testing procedures and requirements for registering a valid breath sample; (3) during each post-arrest test attempt, Cook "would expel some air and stop[;]" or (4) there was insufficient evidence of "any potential neurological condition [that] would [have] prevent [ed] [Cook] from providing a sufficient breath sample for chemical analysis [.]" These uncontested findings of fact supported Officer Weston's conclusion of law that Cook willfully refused to submit to a chemical analysis. See Steinkrause , 201 N.C. App. at 296, 689 S.E.2d at 383 (finding competent evidence supported conclusion that petitioner willfully refused test, where unchallenged findings "establish[ed] that [p]etitioner did not provide a valid breath sample to the Intoxilyzer instrument; on several attempts [p]etitioner stopped blowing after one second and did not provide a continuous sample of breath as instructed; and [p]etitioner was provided numerous opportunities to provide a valid sample."); Tedder , 119 N.C. App. at 177, 457 S.E.2d at 886 (holding trial court's findings supported conclusion that petitioner willfully refused test, where "petitioner was informed of his rights regarding chemical analysis, petitioner indicated he would submit to the test, and petitioner blew into the machine five or six times but failed to give a sufficient sample for analysis.").
III. Conclusion
The trial court erroneously found that Officer Weston's findings of fact did not support a conclusion of law that Cook willfully refused to submit to a chemical analysis. Because the trial court incorrectly exercised its scope of review, we reverse its order reinstating Cook's driving privilege.
REVERSED.
Report per Rule 30(e).
Judges McCULLOUGH and DAVIS concur.
Judge McCullough concurred in this opinion prior to 24 April 2017.

N.C.G.S. § 20-16.2(a)(6) provides in part that an individual who has been arrested for an implied-consent offense and is asked to submit to a chemical analysis "may ... select a witness to view the testing procedures remaining after the witness arrives, but the testing may not be delayed for these purposes longer than 30 minutes from the time [the arrestee is] notified of these rights."

A transcript of the 4 April 2016 hearing is not included in the record on appeal. See In re Estates of Barrow, 122 N.C. App. 717, 721, 471 S.E.2d 669, 672 (1996) (noting that "[t]his Court's review is limited to the record on appeal together with a transcript, if submitted."). Additionally, Cook has filed no brief in the present appeal.