ZACHARY, Judge.
Petitioner Jeffrey Blake St. John appeals from a superior court order affirming the decision of the Division of Motor Vehicles (DMV) of the North Carolina Department of Transportation to revoke his driver's license based on his willful refusal to submit to a chemical analysis of his breath after he was arrested for impaired driving. On appeal, petitioner primarily challenges the DMV's conclusions that the arresting officer had reasonable grounds to believe that petitioner had committed an implied consent offense and that petitioner willfully refused to submit to a chemical analysis of his breath. For the reasons that follow, we affirm the superior court's order.
I. Background
At 2:01 p.m. on 23 April 2015, North Carolina Highway Patrol Trooper J.C. Lindley received a report of a car accident in Union County. After Trooper Lindley arrived at the scene, he discovered that petitioner's Lexus sedan had crashed into the back of an Isuzu wagon as it was sitting idle at a stop sign. While speaking with petitioner, Trooper Lindley noticed that petitioner, who had a strong odor of alcohol on his breath, was "very unsteady" and "could barely stand up." Petitioner's eyes were red and glassy, and his speech was slurred.
It is undisputed that petitioner consumed alcohol before the accident, but the point at which that consumption took place is not entirely clear: Trooper Lindley stated that petitioner admitted that "he had two glasses of wine [,]" but according to petitioner, he qualified that admission by explaining that he had not consumed any wine after midnight of the night before, approximately fourteen hours before the accident occurred.
Petitioner performed several field sobriety tests at Trooper Lindley's request. In scoring the tests, Trooper Lindley observed that petitioner exhibited six of the possible six clues (of impairment) on the Horizontal Gaze Nystagmus Test, six of a possible eight clues on the Walk and Turn Test, and four of a possible four clues on the One-Leg Stand Test. Trooper Lindley then administered a portable breath test, the Alco-Sensor test, to petitioner. The Alco-Sensor was "positive for alcohol," but petitioner refused to submit a second breath sample. Consequently, Trooper Lindley arrested petitioner for, inter alia , impaired driving and transported him to the Union County Jail.
On the way to the jail, Trooper Lindley explained that law enforcement would request that petitioner submit to either a Toxilyzer breath test or a blood test to measure his blood alcohol level. Petitioner claims that he informed Trooper Lindley that he would not take the breath test but that he would provide a blood sample. However, Trooper Lindley did not recall petitioner making this statement. At 3:15 p.m., Trooper Lindley informed petitioner of his implied consent rights, both orally and in writing in accordance with N.C. Gen. Stat. § 20-16.2(a), and asked petitioner to submit a sample of his breath for a chemical analysis. Petitioner refused both to sign the implied consent rights form and to submit to a breath sample.
By letter dated 7 May 2015, the DMV notified petitioner that his driver's license would be revoked for willfully refusing to submit to a chemical analysis. Petitioner contested the revocation at a hearing before an officer of the DMV on 3 November 2015. The hearing officer upheld the revocation, finding that the evidence was sufficient to conclude that all of the statutory prerequisites for revocation had been met-specifically, that petitioner was charged with an implied consent offense; that Trooper Lindley had reasonable grounds to believe petitioner had committed an implied consent offense; that petitioner was notified of his rights under N.C. Gen. Stat. § 20-16.2(a) ; and that petitioner willfully refused to submit to a chemical analysis of his breath.
Petitioner appealed the hearing officer's decision to the Union County Superior Court, which found that sufficient evidence in the record supported the hearing officer's findings of fact; that the findings supported the hearing officer's conclusions of law; and that the hearing officer had not committed an error of law in revoking petitioner's driver's license. As a result, on 21 March 2016, the superior court entered an order affirming the DMV's decision. Petitioner now appeals from the superior court's order.
II. Discussion
A. Generally Applicable Law and Standard of Review
When a person drives any vehicle on a road or public vehicular area "[w]hile under the influence of an impairing substance[ ] or [a]fter having consumed sufficient alcohol that he has ... an alcohol concentration of 0.08 or more [,]" that person has committed the implied consent offense of impaired driving. N.C. Gen. Stat. § 20-138.1(a)(1), (2) (2015). Pursuant to N.C. Gen. Stat. § 20-16.2(a) (2015), "[a]ny law enforcement officer who has reasonable grounds to believe that the person charged has committed the implied-consent offense may obtain a chemical analysis of the person." If a person charged with an implied consent offense willfully refuses to submit to a chemical analysis, his license will be revoked for twelve months. N.C. Gen. Stat. § 20-16.2(d) (2015).
The person charged, however, may contest the license revocation at a civil hearing before an officer of the DMV. Id. The hearing officer is limited to consideration of whether:
(1) The person was charged with an implied-consent offense or the driver had an alcohol concentration restriction on the driver[']s license pursuant to G.S. 20-19 ;[1]
(2) A law enforcement officer had reasonable grounds to believe that the person had committed an implied-consent offense or violated the alcohol concentration restriction on the driver[']s license;
(3) The implied-consent offense charged involved death or critical injury to another person, if this allegation is in the affidavit;[2]
(4) The person was notified of the person's rights as required by subsection (a); and
(5) The person willfully refused to submit to a chemical analysis.
Id. If the DMV sustains the revocation following the hearing, the person charged is entitled to file a petition for review in the "superior court district ... where the charges were made[.]" N.C. Gen. Stat. § 20-16.2(e) (2015). In this context, the superior court acts as an "appellate court," not "the trier of fact." Johnson v. Robertson , 227 N.C. App. 281, 286, 742 S.E.2d 603, 607 (2013).
By statute, the superior court's review is "limited to whether there is sufficient evidence in the record to support the Commissioner's findings of fact and whether the conclusions of law are supported by the findings of fact and whether the Commissioner committed an error of law in revoking the license." N.C. Gen. Stat. § 20-16.2(e). Our review of the superior court's decision is comprised of "the following inquiry: '(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " Robertson , 227 N.C. App. at 286-87, 742 S.E.2d at 607 (quoting ACT-UP Triangle v. Comm'n for Health Servs. , 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) ).
B. Findings of Fact
As an initial matter, we address petitioner's argument that the hearing officer's findings of fact were mere recitations of the evidence. Petitioner relies primarily on Finding of Fact No. 15:
The petitioner performed the standard field sobriety tests on an impacted gravel pit on the side of the road. The petitioner was wearing Adidas navy blue thong flip flops. The petitioner does not recall the trooper asking if he had any problems with his legs or feet. The petitioner stated he has arthritis in his ankles and knees. The petitioner stated he has a herniated disk in his back as well as a 'cage' that was cemented in his spine with screws. The petitioner stated that this condition sometimes affects his balance. The petitioner stated his last sip of wine was at midnight the night before.
(Emphasis added).
We agree that
[r]ecitations of the testimony of each witness do not constitute findings of fact by the [hearing officer when] ... they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented. Where there is directly conflicting evidence on key issues, it is especially crucial that the [administrative agency] make its own determination as to what pertinent facts are actually established by the evidence, rather than merely reciting what the evidence may tend to show.
Moore v. Moore , 160 N.C. App. 569, 571-72, 587 S.E.2d 74, 75 (2003) (citations and internal quotation marks omitted). However, while Finding of Fact 15 may be defective under the standard set forth in Moore , this finding, which recites petitioner's own self-serving testimony, was not essential to the hearing officer's decision in any way. Petitioner also fails to identify any directly conflicting evidence on the limited issues that were to be considered at the revocation hearing. The fact that petitioner stated that he had medical conditions that affect his balance did not require the hearing officer to believe that testimony or to base definitive findings of fact on it, particularly without any medical or expert evidence as to the details of the conditions and exactly how they affected petitioner on 23 April 2015. Furthermore, when the findings of fact are considered in their totality, the remainder of the hearing officer's findings were not simply recitations of testimony, and they identify ultimate facts-such as petitioner's poor performance on the field sobriety tests and his refusal to take the Toxilyzer breath test-" 'sufficient for the appellate court to determine that the judgment [was] adequately supported by competent evidence.' " In re Anderson , 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) (quoting Montgomery v. Montgomery , 32 N.C. App. 154, 156-57, 231 S.E.2d 26, 28 (1977) ). Accordingly, petitioner's argument is without merit.
C. Reasonable Grounds To Arrest Petitioner for Impaired Driving
Petitioner argues that the hearing officer's findings of fact are not supported by evidence, and that the findings do not support the conclusion of law that Trooper Lindley had reasonable grounds to believe petitioner committed an implied consent offense. We disagree.
In the context of a license revocation proceeding, "the term 'reasonable grounds' is treated the same as 'probable cause.' " Hartman v. Robertson , 208 N.C. App. 692, 695, 703 S.E.2d 811, 814 (2010) (citation omitted). Although it is impossible to articulate precisely what constitutes probable cause, the United States Supreme Court has recognized that the standard "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates , 462 U.S. 213, 243 n.13, 76 L.Ed. 2d 527, 552 n.13 (1983). Put another way, "the degree of certainty necessary for probable cause is a fair probability, an amount of proof greater than reasonable suspicion but less than preponderance of the evidence, clear and convincing, or beyond a reasonable doubt." State v. Crawford , 125 N.C. App. 279, 282, 480 S.E.2d 422, 424 (1997) (citations and quotation marks omitted). " 'To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.' " Steinkrause v. Tatum , 201 N.C. App. 289, 293, 689 S.E.2d 379, 381-82 (2009) (quoting Maryland v. Pringle , 540 U.S. 366, 371, 157 L.Ed. 2d 769, 773 (2003) ) (other citation and internal quotation marks omitted), aff'd per curiam , 364 N.C. 419, 700 S.E.2d 222 (2010). This determination "depends on the totality of the circumstances." Id. at 293, 689 S.E.2d at 381 (2009) (citing Pringle , 540 U.S. at 371, 157 L.Ed. 2d at 773 ).
Here, the hearing officer found that Trooper Lindley arrived at the accident scene and discovered that "petitioner had run into the rear of another vehicle that was sitting still at [a] stop sign." During his investigation of the accident, which occurred in the early afternoon, Trooper Lindley noticed that petitioner's eyes were red and glassy and that petitioner's speech was slurred. Petitioner-who was swaying from side to side and was unsteady on his feet-also "had a strong odor of alcohol coming from his breath." When Trooper Lindley asked petitioner if he had consumed any alcohol, "petitioner stated [that] he drank two glasses of wine the night before." All of these circumstances led Trooper Lindley to administer a series of field sobriety tests to petitioner, who scored poorly on every test. After Trooper Lindley "performed an Alco-sensor test ... and ... petitioner tested positive for alcohol[,]" petitioner was arrested for, inter alia , impaired driving.
These unchallenged findings are fully supported by Trooper Lindley's testimony, and they are more than sufficient to establish probable cause. In fact, North Carolina courts have determined that probable cause for an impaired driving arrest existed on the basis of equally, or even less, compelling evidence. See Farrell v. United States Army Brigadier Gen. , --- N.C. App. ----, ----, 784 S.E.2d 657, 660 (driver's eyes were glassy and bloodshot, his speech was slightly slurred, and he lied to officer about using mouthwash during the traffic stop), appeal dismissed sub nom. Farrell v. Thomas , ---N.C. ----, 793 S.E.2d 214, and appeal dismissed sub nom. Farrell v. Thomas , --- N.C. ----, 794 S.E.2d 318 (2016) ; Steinkrause , 201 N.C. App. at 295, 689 S.E.2d at 383 (severe one-car accident and odor of alcohol on driver); Moore v. Hodges , 116 N.C. App. 727, 730, 449 S.E.2d 218, 220 (1994) (single car accident at 1:30 a.m., Alco-Sensor results were positive for alcohol, driver admitted drinking liquor earlier in the evening, and driver was talkative and had mumbled speech); Richardson v.Hiatt , 95 N.C. App. 196, 200, 381 S.E.2d 866, 868 (one-car accident in the middle of afternoon and strong odor of alcohol on driver), opinion modified on reh'g , 95 N.C. App. 780, 384 S.E.2d 62 (1989). In the instant case, petitioner swayed from side to side while exhibiting red and glassy eyes as well as slurred speech. Petitioner also smelled of alcohol, failed three field sobriety tests, and tested positive for alcohol on the Alco-Sensor. Accordingly, the hearing officer's findings supported the conclusion that Trooper Lindley had reasonable grounds to believe that petitioner had committed the implied consent offense of driving while impaired.
D. Willful Refusal To Submit To A Chemical Analysis
Petitioner next argues that the hearing officer's findings did not support the conclusion of law that petitioner willfully refused the Toxilyzer breath test. Once again, we disagree.
The record reveals that petitioner was advised of his implied consent rights under N.C. Gen. Stat. § 20-16.2(a), which provides that:
Before any type of chemical analysis is administered the person charged shall be taken before a chemical analyst authorized to administer a test of a person's breath or a law enforcement officer who is authorized to administer chemical analysis of the breath, who shall inform the person orally and also give the person a notice in writing that[, inter alia ]:
...
(1) You have been charged with an implied-consent offense. Under the implied-consent law, you can refuse any test, but your driver[']s license will be revoked for one year and could be revoked for a longer period of time under certain circumstances, and an officer can compel you to be tested under other laws.
...
(6) You may call an attorney for advice and select a witness to view the testing procedures remaining after the witness arrives, but the testing may not be delayed for these purposes longer than 30 minutes from the time you are notified of these rights. You must take the test at the end of 30 minutes even if you have not contacted an attorney or your witness has not arrived.
A "willful refusal" occurs whenever a person:
"(1) is aware that he has a choice to take or to refuse to take the test; (2) is aware of the time limit within which he must take the test; (3) voluntarily elects not to take the test; and (4) knowingly permits the prescribed thirty-minute time limit to expire before he elects to take the test."
Steinkrause , 201 N.C. App. at 295, 689 S.E.2d at 383 (quoting Etheridge v. Peters , 301 N.C. 76, 81, 269 S.E.2d 133, 136 (1980) ). Put simply, a refusal is willful "when a person purposefully makes a conscious choice not to submit to a chemical analysis. Thus, '[a] finding that a driver "did refuse" to take the test is equivalent to a finding that the driver "willfully refused" to take the test.' " Burris v. Thomas , --- N.C. App. ----, ----, 780 S.E.2d 885, 888 (2015) (internal citation omitted) (quoting Mathis v. North Carolina Div. of Motor Vehicles , 71 N.C. App. 413, 416, 322 S.E.2d 436, 438 (1984) ), writ denied , review denied , --- N.C. ----, 784 S.E.2d 471 (2016).
Petitioner admits that he "did not consent to a breath test" due to "legitimate concerns concerning the accuracy of the[ ] test[ ]" and then qualifies this statement by asserting that he "would have volunteered to take a more accurate blood test." According to petitioner, the decisions in State v. Williams , 234 N.C. App. 445, 759 S.E.2d 350, writ denied , review denied , 367 N.C. 528, 762 S.E.2d 201 (2014) and State v. Sisk , 238 N.C. App. 553, 766 S.E.2d 694 (2014), seem "to suggest the legitimacy of someone accused of an implied-consent offense refusing a breath test yet consenting to a blood test."
In Williams , the defendant-who had been arrested for impaired driving and transported to the Sheriff's Office-acknowledged and signed a copy of his implied consent rights; however, he refused to submit to a breath test. 234 N.C. App. at 446, 759 S.E.2d at 351. Consequently, a Sheriff's deputy requested that a blood kit be brought in for the defendant, who then signed another consent form for the blood test. Id. The deputy, however, never re-advised the defendant of his implied consent rights before the defendant's blood was drawn. Id.
The trial court granted the defendant's motion to suppress the blood test results, id. , and this Court affirmed, holding that "the State was required, pursuant to the mandates of [N.C. Gen. Stat.] § 20-16.2(a) and as reiterated by [N.C. Gen. Stat.] § 20-139.1(b5), to re-advise [the] defendant of his implied consent rights before requesting he take a blood test." Id. at 451, 759 S.E.2d at 354.
In Sisk , the defendant received a copy and acknowledged awareness of his implied consent rights. 238 N.C. App. at 554, 766 S.E.2d at 695. The defendant then refused to take a breath test but stated "that he would give a blood test[.]" Id. After being transported to the hospital, the defendant voluntarily gave a blood sample. Id. The defendant was convicted for, inter alia , impaired driving, and on appeal to this Court, he argued that, pursuant to Williams , the trial court erred in admitting the results of his blood test into evidence. Id. at 555, 766 S.E.2d at 696. The Sisk Court rejected this argument and reasoned as follows:
Here, unlike in Williams , Defendant-without any prompting-volunteered to submit to a blood test. Because the prospect of Defendant submitting to a blood test originated with Defendant-as opposed to originating with Trooper Sanders-we are satisfied that Defendant's statutory right to be readvised of his implied consent rights was not triggered. See N.C. Gen. Stat. § 20-139.1(b5) ("If a subsequent chemical analysis is requested pursuant to this subsection, the person shall again be advised of the implied consent rights in accordance with G.S. 20-16.2(a)." (emphasis added)). Therefore, we conclude that the trial court did not err in admitting evidence of the results of Defendant's blood test.
Id. at 557, 766 S.E.2d at 697.
We find that Williams and Sisk have no application to the present case. Petitioner's argument, as we understand it, is that his refusal to take the breath test could not be willful when he was willing to take a blood test. The implication is that Trooper Lindley was somehow required to offer petitioner a blood test after he refused the breath test. Yet we are unaware of any law that would impose such an affirmative obligation on Trooper Lindley in the face of petitioner's conscious choice not to submit to the breath test. "What matters is whether the person [charged] was given the choice to voluntarily submit to the test and, after being given that choice, chooses not to voluntarily submit. At that point, the person has willfully refused." Burris , --- N.C. App. at ----, 780 S.E.2d at 888. It is undisputed that petitioner refused the breath test, and that the hearing officer made a specific finding concerning that refusal. Accordingly, the hearing officer properly concluded that petitioner willfully refused to submit to a chemical analysis of his breath.
III. Conclusion
For the reasons discussed above, the superior court exercised the appropriate scope of review and correctly determined that there is sufficient evidence in the record to support the hearing officer's findings of fact, and that his conclusions of law are supported by the findings of fact. We affirm the superior court's order.
AFFIRMED.
Report per Rule 30(e).
Judges ELMORE and DILLON concur.

Nothing in the record suggests that petitioner had an alcohol concentration restriction on his driver's license.

Neither death nor critical injury to another person was an issue in this case.