NO. COA13-1221

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

STATE OF NORTH CAROLINA

    v.                                Hyde County
                                      Nos. 11 CRS 50118, 12 CRS 22
SAMUEL EUGENE WILLIAMS, JR.,
    Defendant.


    Appeal by the State from order entered 23 July 2013 by

Judge Wayland J. Sermons, Jr., in Hyde County Superior Court.

Heard in the Court of Appeals 5 March 2014.


    *Attorney General Roy Cooper, by Assistant Attorney General
    John W. Congleton, for the State.*

    *The Robinson Law Firm, P.A., by Leslie S. Robinson, for
    defendant-appellee.*


    BRYANT, Judge.


    Pursuant to N.C. Gen. Stat. § 15A-979(c), where the State

intends to appeal from a trial court's ruling on a motion, the

State must file a certificate with the trial court indicating

that the State's appeal is not taken for purposes of delay and

the evidence sought is necessary to the State's case.  Where the

State seeks to administer multiple chemical analysis tests to a

defendant suspected of driving while impaired, the State must

advise the defendant of his implied consent rights prior to the administration of each new test pursuant to N.C. Gen. Stat. § 20-16.2(a). Where defendant fails to file a notice of appeal pursuant to N.C. R. App. P. 3, defendant's appeal must be dismissed.

On 21 June 2011 at approximately 8:41 p.m., Hyde County Sheriff's Deputy Scott Wilkerson was dispatched to an accident scene on Ocracoke Island involving a fatality and a golf cart. Upon arriving at the scene, Deputy Wilkerson observed a body lying in front of a golf cart and a man, later identified as defendant Samuel Eugene Williams, Jr., standing next to the golf cart. Defendant admitted to driving the golf cart. Deputy Wilkerson testified that defendant had red, glassy eyes, was very talkative, and smelled strongly of alcohol. Defendant told Deputy Wilkerson that he had consumed six beers that afternoon. Deputy Wilkerson administered a portable breath test (alco-sensor) to defendant which yielded a positive result. Defendant was arrested and charged with driving while impaired.

Defendant was transported to the Ocracoke Island Sheriff's Office intoxilyzer room. Deputy Wilkerson read and gave defendant a copy of his implied consent rights; defendant signed the implied consent rights form acknowledging that he understood

his rights. After waiting thirty minutes, Deputy Wilkerson, a certified chemical analyst, asked defendant to submit to a chemical analysis of his breath, but defendant refused.

Deputy Wilkerson then requested that a blood testing kit be brought to the office for defendant. Although Deputy Wilkerson did not re-advise defendant of his implied consent rights for the blood test, he gave defendant a consent form for the testing which defendant signed. Defendant's blood was then drawn using the blood testing kit by a paramedic on site.

On 23 May 2012, defendant filed motions to suppress the following: the results of the alco-sensor; evidence obtained as a result of the arrest of defendant based on lack of probable cause; defendant's statement that he consumed "3 Jaeger bombs"; and statements made by defendant prior to being advised of his Miranda rights. On 13 June 2012, defendant filed an additional motion to suppress evidence obtained as a result of the chemical analysis of his blood.

On 23 July 2013, the trial court entered a written order denying the following: defendant's motion to suppress the results of the alco-sensor; the motion to suppress evidence obtained as a result of defendant's arrest based on lack of probable cause; and the motion to suppress defendant's statement

that he had consumed "3 Jaeger bombs." The trial court granted defendant's motions to suppress the results of the chemical blood test and defendant's statements made prior to being advised of his Miranda rights. The State appeals from the portion of the order granting defendant's motion to suppress the results of the chemical blood test.

_____

Defendant attempts to bring forth issues in his brief on appeal challenging the trial court's order denying his motions to suppress the results of the alco-sensor and evidence obtained as a result of his arrest based on lack of probable cause. However, defendant has not filed a notice of appeal from the trial court's order as required by Rule 3 of our Rules of Appellate Procedure, N.C. R. App. P. 3 (2013), nor has defendant filed a writ of certiorari for review of the issues he attempts to raise. As such, we dismiss defendant's arguments challenging the trial court's denial of his motions. *See State v. May*, 207 N.C. App. 260, 262, 700 S.E.2d 42, 44 (2010) (dismissing appeal where "defendant failed to give timely written notice of appeal").

_____

On 10 January 2014, defendant filed a motion to dismiss the State's appeal, arguing that the State failed to meet the certification requirements of N.C.G.S. § 15A-979(c) because the State addressed its certificate to "the court" rather than to the trial court judge. We disagree.

North Carolina General Statutes, section 15A-979(c) states that:

> An order by the superior court granting a motion to suppress prior to trial is appealable to the appellate division . . . upon certificate by the prosecutor to the judge who granted the motion that the appeal is not taken for the purpose of delay and that the evidence is essential to the case.

N.C.G.S. § 15A-979(c) (2013).

The State noted the following in its certificate, "Certification Under N.C.G.S. § 15A-979(c)":

> THE STATE OF NORTH CAROLINA, by the undersigned assistant district attorney and pursuant to N.C.G.S. §§ [sic] 15A-979(c), having given notice of appeal to the Court of Appeals from the pretrial order of the trial court granting defendant=s [sic] motion to suppress evidence in this case, certifies to the court that the appeal is not taken for the purpose of delay and that the evidence suppressed is essential to the prosecution of the case.

Defendant contends that because N.C.G.S. § 15A-979(c) requires that the certificate be presented to the *judge* who

granted the motion, any deviation from this statutory language as presented in the certificate renders the State's certificate void. Defendant's argument lacks merit, as the word "judge" can be, and is, synonymous with "the court."

> When construing statutes, this Court first determines whether the statutory language is clear and unambiguous. If the statute is clear and unambiguous, we will apply the plain meaning of the words, with no need to resort to judicial construction. However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment.

*Wiggs v. Edgecombe Cnty.*, 361 N.C. 318, 322, 643 S.E.2d 904, 907 (2007) (citations and quotation omitted). We agree with the State that the term "judge" is ambiguous, as "judge" can also mean "court." *See* BLACK'S LAW DICTIONARY 405 (9th ed. 2009) (defining "court" as "[a] governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice[,]" or as "[t]he judge or judges who sit on such a governmental body"). Moreover, in looking at the purpose of N.C.G.S. § 15A-979(c), it is clear that this statute is intended to be a procedural safeguard for defendants against the State, rather than an insurmountable burden for the State. Our Courts have held that the certification requirement under N.C.G.S. § 15A-979(c) is paramount in that by failing to file a certificate

pursuant to N.C.G.S. § 15A-979(c), the State may not pursue its appeal. *See State v. Judd*, 128 N.C. App. 328, 329–30, 494 S.E.2d 605, 606 (1998) (holding this Court lacked jurisdiction where the State failed to file a certificate as required by N.C.G.S. § 15A-979(c)); *State v. Blandin*, 60 N.C. App. 271, 272–73, 298 S.E.2d 759, 759–60 (1983) (dismissing the State's appeal for failure to timely file a certificate pursuant to N.C.G.S. § 15A-979(c), as "[t]o give the State the right to file the certificate after the case has already been docketed in the appellate court would be to reduce the requirement of the certificate to a nullity. If G.S. § 15A-979(c) means anything at all, it means that the Court is bound to dismiss this appeal.").

The language of such a certification, however, is not similarly critical. Rather, the certificate must merely acknowledge that the State's "appeal is not taken for the purpose of delay and that the evidence is essential to the case." Provided the certificate contains this required statement and is timely filed with the trial court, the actual wording of the certificate in its addressing of the trial court is flexible. *See State v. Turner*, 305 N.C. 356, 359, 289 S.E.2d 368, 370 (1982) (holding that the "two obvious purposes of the certificate [pursuant to N.C.G.S. § 15A-979(c)] are to require

the prosecutor to certify that the appeal is not taken for purpose of delay, and that the suppressed evidence is essential to the case"). As it should be clear from the context of N.C.G.S. § 15A-979(c) that in filing a certificate the State is addressing the judge who granted the motion upon which the State wishes to appeal, we find it permissible for the State to use terms such as "judge," "the court," "this court," etc. Accordingly, we deny defendant's motion to dismiss the State's appeal.

_____

On appeal, the State argues that the trial court erred in granting defendant's motion to suppress the results of the chemical blood test. We disagree.

"The standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Smith*, 160 N.C. App. 107, 114, 584 S.E.2d 830, 835 (2003) (citation and quotation omitted). Where a trial court's conclusions of law are supported by findings of fact we will not disturb those conclusions on appeal. *State v. Logner*, 148 N.C. App. 135, 137—38, 557 S.E.2d 191, 193—94 (2001).

Specifically, the State argues that evidence of the results of the chemical blood test was admissible because although Deputy Wilkerson did not re-advise defendant of his implied consent rights, defendant signed a consent form for the testing.

North Carolina General Statutes, section 20-16.2, Basis for Officer to Require Chemical Analysis; Notification of Rights, holds that:

> Any person who drives a vehicle on a highway or public vehicular area thereby gives consent to a chemical analysis if charged with an implied-consent offense. Any law enforcement officer who has reasonable grounds to believe that the person charged has committed the implied-consent offense may obtain a chemical analysis of the person.
>
> *Before any type of chemical analysis is administered the person charged shall be taken before a chemical analyst* authorized to administer a test of a person's breath or a law enforcement officer who is authorized to administer chemical analysis of the breath, *who shall inform the person orally and also give the person a notice in writing* that:
>
> (1) You have been charged with an implied-consent offense. Under the implied-consent law, you can refuse any test, but your driver[']s license will be revoked for one year and could be revoked for a longer period of time under certain circumstances, and an officer can compel you to be tested under other laws.
>
> .                    .                    .

> (3) The test results, or the fact of your refusal, will be admissible in evidence at trial.

N.C. Gen. Stat. § 20-16.2(a)(1, 3) (2013) (emphasis added).

Deputy Wilkerson read and gave to defendant a copy of his implied consent rights, and defendant signed the form acknowledging he understood these rights. Defendant then refused to take a breath test. Where a defendant refuses to take a breath test, such as here, the State may then seek to administer a different type of chemical analysis such as a blood test pursuant to North Caroline General Statutes, Section 20-139.1(b5), Subsequent Tests Allowed:

> A person may be requested, pursuant to G.S. 20-16.2, to submit to a chemical analysis of the person's blood or other bodily fluid or substance in addition to or in lieu of a chemical analysis of the breath, in the discretion of a law enforcement officer . . . . *If a subsequent chemical analysis is requested pursuant to this subsection, the person shall again be advised of the implied consent rights in accordance with G.S. 20-16.2(a).* A person's willful refusal to submit to a chemical analysis of the blood or other bodily fluid or substance is a willful refusal under G.S. 20-16.2. If a person willfully refuses to provide a blood sample under this subsection, . . . then a law enforcement officer with probable cause to believe that the offense involved impaired driving or was an alcohol-related offense made subject to the procedures of

> G.S. 20-16.2 shall seek a warrant to obtain
> a blood sample.

N.C. Gen. Stat. §20-139.1(b5) (2013) (emphasis added). N.C.G.S. §§ 20-16.2 and 20-139.1 must be read *in pari materia* "to determine the procedures governing the administering of chemical analyses." *Nicholson v. Killens*, 116 N.C. App. 473, 478, 448 S.E.2d 542, 544 (1994). "However, we conclude that G.S. 20-16.2, and that statute alone, sets forth the procedures governing notification of rights pursuant to a chemical analysis." *Id*. at 478, 448 S.E.2d at 544—45. As such, although the State is correct in asserting that it could seek to administer a blood test to defendant after defendant refused to take a breath test[1], the State was required, pursuant to the mandates of N.C.G.S. § 20-16.2(a) and as reiterated by N.C.G.S. § 20-139.1(b5), to re-advise defendant of his implied consent rights before requesting he take a blood test. This is particularly important when, as here, defendant had refused a breath test after being advised of his rights and acknowledging them. "Statutes imposing a penalty are to be strictly construed[.]" *Id*. at 477, 448 S.E.2d at 544 (citation omitted);

---

[1] The statute clearly provides that upon a defendant's refusal to provide a blood sample as requested, law enforcement may seek a warrant to obtain the blood sample for testing. N.C.G.S. § 20-139.1(b5).

*see also State v. Gray*, 28 N.C. App. 506, 506–07, 221 S.E.2d 765, 765–66 (1976) (holding that failure of the State to show a breathalzyer test was properly administered required the suppression of all evidence stemming from that test); *State v. Shadding*, 17 N.C. App. 279, 283, 194 S.E.2d 55, 57 (1973) ("The failure [of the State] to establish that defendant was accorded his statutory rights rendered the results of the breathalyzer test inadmissible in evidence, and its admission over objection constituted prejudicial error."); *State v. Warf*, 16 N.C. App. 431, 431–32, 192 S.E.2d 37, 38 (1972) (holding that where the State fails to carry its burden of showing that a breathalyzer test was properly administered, evidence of that test must be suppressed). Accordingly, the trial court did not err in granting defendant's motion to suppress as to the chemical blood test.

The State further argues that even if N.C.G.S. § 20-139.1(b)(5) is applicable, the trial court erred in granting defendant's motion to suppress because any statutory violation was "technical and not substantial and the defendant has shown no prejudice" because defendant had been advised of his implied consent rights as to the breath test "less than an hour before the blood test." The State cites *State v. Green*, 27 N.C. App.

491, 219 S.E.2d 529 (1975), and *State v. Buckner*, 34 N.C. App. 447, 238 S.E.2d 635 (1977), in support of its argument.

In *Green*, the defendant alleged that the arresting officer's "garbled" reading of the defendant's implied consent rights violated N.C.G.S. § 20-16.2. This Court disagreed, finding that the arresting officer's reading of the defendant's implied consent rights, coupled with the defendant receiving a printed copy of those rights and signing a consent form prior to taking a breath test, was sufficient. *Green*, 27 N.C. App. at 494—95, 219 S.E.2d at 531—32.

In *Buckner*, the defendant was properly read and given a copy of his implied consent rights but did not sign a form acknowledging his understanding of these rights before he took a breath test. This Court found that the breath test was admissible into evidence as it was clear from the record that the defendant was properly instructed as to his rights and failed to exercise those rights. *Buckner*, 34 N.C. App. at 451, 238 S.E.2d at 638.

Both *Green* and *Buckner* are distinguishable from the instant case. In *Green* and *Buckner*, each defendant was advised of his implied consent rights before being asked to take a single chemical analysis – a breath test. In each case, the technical

deficiencies raised by the defendants did not override the facts showing each defendant was advised of and given copies of his implied consent rights prior to testing. Here, defendant was advised of his implied consent rights and thereafter refused to take the initial chemical breath test. When the State then sought to administer a second chemical analysis, a blood test, defendant was not advised of his implied consent rights as to that test. A failure to advise cannot be deemed a mere technical and insubstantial violation. The State was *required* to re-advise defendant of his implied consent rights prior to the second chemical analysis test – a blood test. Since "[s]tatutes imposing a penalty are to be strictly construed[,]" the State's failure to adhere to the requirements of N.C.G.S. §§ 20-16.2 and 20-139.1 must result in suppression of the results of the blood test. Accordingly, the State's argument is overruled.

Affirmed.

Judges STEPHENS and DILLON concur.