ELMORE, Judge.
 

 *467
 
 Defendant Gregory Cole appeals a judgment entered after a jury convicted him of driving while impaired ("DWI"). He argues the superior court erred by (1) denying his motion to dismiss the indictment
 
 *468
 
 for lack of jurisdiction because the same charge against him remained pending and valid in district court; (2) denying his motion to suppress the results of roadside sobriety tests and a later intoxilyzer test because those tests were administered during an unlawful detention that arose as a direct consequence of an illegal roadside breath test and thus constituted tainted fruit of that poisonous tree; (3) denying his motion to suppress the intoxilyzer results on the additional ground that the superior court improperly concluded the administrating officer's request he submit a breath sample on a second intoxilyzer machine after the first one failed to produce a valid result did not constitute a request for a "subsequent chemical analysis" under
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5) and thus did not trigger that statute's requirement that the officer re-advise him of his implied-consent rights before administering the test on the second machine; and (4) enhancing his sentence because the superior court's finding of the existence of an aggravating factor was based on his prior DWI conviction that was pending on appeal and thus was not "final" so it failed to qualify as a "prior conviction" for enhanced sentencing purposes under
 
 N.C. Gen. Stat. § 20-179
 
 (c)(1).
 

 We hold the superior court properly (1) denied the motion to dismiss the indictment for lack of jurisdiction because the district court charge was no longer pending or valid; (2) denied the motion to suppress the evidence discovered after the roadside breath test because, before that test, objective reasonable suspicion existed that defendant may be driving while impaired, thereby justifying the officer to prolong the initial traffic stop to investigate defendant's potential impairment; (3) denied the motion to suppress the intoxilyzer results because the officer's request that defendant submit another breath sample to administer the same chemical analysis of the breath on a second intoxilyzer machine did not trigger
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5) 's re-advisement requirement; and (4) enhanced defendant's sentence because his prior DWI conviction, despite its status being pending on appeal, supporting a finding of the existence of the grossly aggravating factor of a "prior conviction" under
 
 N.C. Gen. Stat. § 20-179
 
 (c). Accordingly, we hold defendant received a fair trial and sentence, free of error.
 

 I. Background
 

 The State's evidence tended to show the following facts. Around 12:30 a.m. on 8 March 2015, Officer Jonathan Ray of the Weaverville Police Department was conducting a business security check at Twisted Laurel, a bar and grill in Weaverville, when he observed defendant exit through the back door of the business and walk toward the parking lot. After completing the business check a few minutes later, Officer
 
 *469
 
 Ray started working traffic control and observed a burgundy van leave Twisted Laurel's parking lot with no rear lamps illuminating its license plate in violation of
 
 N.C. Gen. Stat. § 20-129
 
 (d). Officer Ray followed the van for about two miles, observing it "weaving slightly within its lane" and "travel[ ] over onto the white fog line on the right-hand side of the road" a few times, before activating his blue lights and stopping the van.
 
 *459
 
 When Officer Ray approached, he discovered defendant, whom he recognized as the person he had just seen leaving Twisted Laurel, was driving the van. When Officer Ray requested his driver's license, defendant initially presented his debit card. Officer Ray returned the debit card and defendant correctly furnished his license. Officer Ray "smell[ed] an odor of alcohol on [defendant]" and "noticed that he had red glassy eyes as well." When Officer Ray asked if he had been drinking, defendant replied that he had not, but had been "working at the bar" and "may have spilled some alcohol on himself." Defendant "denied drinking about three times before he finally admitted ... that he had been drinking."
 

 Officer Ray asked defendant to submit to a roadside breath test using an Alco Sensor SFST. Defendant replied "[t]he preliminary breath test on the roadside was illegal to use in the State of North Carolina." After Officer Ray informed defendant that if he did not submit to the test, he would be taken into custody and transported to the station for a breath sample, defendant agreed to submit to the roadside breath test, which produced a positive result. Officer Ray then directed defendant out of his vehicle and administered roadside sobriety tests. According to Officer Ray, defendant exhibited "six out of the six clues" on the horizontal gaze nystagmus ("HGN") test; "[f]ive out of eight" clues on the walk-and-turn test; "two" out of "four" clues on the one-leg stand test; and exhibited clues of impairment, including swaying back and forth and inaccurately counting seconds, on the Romberg balance test. After a second breath test also produced a positive result, Officer Ray arrested defendant for DWI and transported him to the Buncombe County Detention Facility.
 

 About ten minutes after arriving at the jail, Officer Ray brought defendant to a room containing three Intox ECIR-II machines, read him his implied-consent rights and furnished him a written copy of those rights pursuant to
 
 N.C. Gen. Stat. § 20-16.2
 
 . Defendant acknowledged his rights and agreed to submit to a chemical analysis of his breath. After waiting the required 15-minute observation period, Officer Ray attempted to administer the test on one of the three intoxilyzer machines. But after defendant's breath sample produced a "mouth alcohol" reading, Officer Ray transferred defendant to one of the
 
 *470
 
 adjacent machines for another test. After waiting another 15-minute observation period and without re-advising defendant of his implied-consent rights, Officer Ray administered the breath test on that second machine, which produced a valid result.
 

 That same night, on 8 March 2015, Officer Ray cited defendant for misdemeanor DWI and for unlawful failure to burn rear vehicle lamps.
 
 See
 

 N.C. Gen. Stat. §§ 20-138.1
 
 , -129(d) (2017). On 6 June 2016, a grand jury issued a presentment requesting the district attorney investigate both offenses. On 11 July 2016, a grand jury indicted defendant of both charges.
 

 Before trial in superior court, defendant moved to quash or dismiss the indictment for lack of jurisdiction. He argued that because the State never dismissed the citation in district court, that charge remained valid and pending, and thus the superior court lacked authority to exercise its jurisdiction over the same offense and must dismiss the indictment.
 
 See
 
 N.C. Gen. Stat. § 15A-954(a)(6) (2017) (requiring a court to "dismiss the charges stated in a criminal pleading if it determines that[ ] ... [t]he defendant has previously been charged with the same offense in another North Carolina court of competent jurisdiction, and the criminal pleading charging the offense is still pending and valid"). The State argued it need not have dismissed the citation in the district court because the indictment superseded that charge and, further, that its records indicate there was no longer any charge against defendant pending in district court. The superior court denied the motion.
 

 Defendant also filed three pretrial motions to suppress evidence. First, he moved to suppress all evidence on the grounds that Officer Ray lacked reasonable suspicion for the traffic stop. The superior court concluded in relevant part that reasonable suspicion existed based on Officer Ray observing the van without rear lamps illuminating the license plate in violation of
 
 *460
 

 N.C. Gen. Stat. § 20-129
 
 and denied the motion. Defendant does not challenge this ruling.
 

 Second, defendant moved to suppress all evidence based on the illegality of the roadside breath test. He argued Officer Ray (1) unlawfully compelled defendant to submit to the roadside breath test and thus the subsequent field sobriety tests results and later intoxilyzer test results constituted tainted fruit of the poisonous tree of that illegal roadside breath test search; (2) unlawfully prolonged the traffic stop because his "demand [for] a preliminary breath test constitute[d] a seizure beyond the scop[e] of the initial stop and without reasonable suspicion of criminal activity"; and (3) improperly relied upon the numerical results of
 
 *471
 
 the roadside breath test in forming probable cause to arrest defendant for DWI and, therefore, that "the State [was] unable to meet its burden to demonstrate [Officer Ray] possessed objectively reasonable probable cause to arrest the defendant." The superior court concluded the roadside breath tests were unlawfully compelled and thus suppressed the positive-results evidence from those tests. However, it further concluded, even without that illegally obtained evidence, Officer Ray had probable cause to arrest defendant for DWI and thus declined to suppress any other evidence.
 

 Third, defendant moved to suppress the intoxilyzer results on the grounds that Officer Ray failed to re-advise him of his implied-consent rights in violation of
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5). Defendant acknowledged that Officer Ray duly advised him of his implied-consent rights under
 
 N.C. Gen. Stat. § 20-16.2
 
 and that he agreed to submit to a chemical analysis of his breath prior to Officer Ray administering that test on the first intoxilyzer machine. He argued that because the first machine failed to produce a valid result, the administration of that test was a "nullity." Thus, defendant asserted, Officer Ray's subsequent request that he provide another sample to administer the test on a second machine was a request for a "subsequent chemical analysis" under
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5), triggering his right under that statute to be re-advised of his implied-consent rights. Therefore, defendant continued, the results of the intoxilyzer test should be suppressed because Officer Ray failed to re-advise him of his implied-consent rights before administering the breath test on the second machine. The superior court concluded Officer Ray's request did not trigger
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5) 's re-advisement requirement because it was merely a request to submit to the same chemical analysis and therefore refused to suppress the intoxilyzer results on that basis.
 

 At trial, defendant failed to object to the introduction of the field-sobriety-tests-results evidence or the intoxilyzer-results evidence, the superior court dismissed the failure to burn rear lamps infraction due to insufficiency of the indictment, and the jury found defendant guilty of DWI.
 

 At sentencing, defendant objected to the use of a prior DWI conviction obtained against him in superior court on 15 September 2016 to support a finding of the existence of a grossly aggravating factor for the purpose of enhancing his sentence. He argued that because the prior conviction was currently pending on appeal, it was not "final" and thus did not qualify as a "prior conviction" under
 
 N.C. Gen. Stat. § 20-179
 
 (c). The superior court concluded the prior DWI conviction, despite it being
 
 *472
 
 pending on appeal, supported a finding of the existence of a grossly aggravating factor but noted its willingness to resentence defendant if that conviction was later reversed. Accordingly, the superior court entered a judgment finding the grossly aggravating factor of a prior DWI conviction and sentencing defendant as a Level Two offender to twelve months' incarceration, suspended for eighteen months of supervised probation with special conditions that he surrender his driver's license to the Division of Motor Vehicles and serve an active term of thirty days. Defendant appeals.
 

 II. Issues Presented
 

 On appeal, defendant presents four issues. First, he argues the superior court erred by denying his motion to dismiss the indictment for lack of jurisdiction because the same charge against him was still valid and pending in district court. Second, that the superior court erred by denying his motion to
 
 *461
 
 suppress all evidence arising from the traffic stop because it was obtained during an unlawful detention that occurred as a direct consequence of an illegal roadside breath test and thus was tainted fruit of that poisonous tree. Third, that the superior court erred by denying his motion to suppress the intoxilyzer results because it improperly concluded Officer Ray's request he provide another breath sample on a different intoxilyzer machine was not a request for a "subsequent chemical analysis" under
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5). And fourth, that the superior court erred by enhancing his sentence on the grounds that his prior DWI conviction, since it was currently pending on appeal, did not qualify as a "prior conviction" under
 
 N.C. Gen. Stat. § 20-179
 
 (c) and thus could not be used to support a finding of the existence of a grossly aggravating factor.
 

 III. Motion to Dismiss Indictment for Lack of Jurisdiction
 

 Defendant first asserts the superior court erred by denying his motion to dismiss the DWI indictment for lack of jurisdiction. He argues that because the State failed to dismiss the citation charging the same offense in district court, that charge remained valid and pending in district court, and thus the superior court was required to dismiss the indictment under N.C. Gen. Stat. § 15A-954(a)(6). We disagree.
 

 A. Review Standard
 

 We review subject-matter jurisdiction challenges
 
 de novo
 
 .
 
 State v. Rogers
 
 , --- N.C. App. ----, ----,
 
 808 S.E.2d 156
 
 , 162 (2017) (citing
 
 Harris v. Matthews
 
 ,
 
 361 N.C. 265
 
 , 271,
 
 643 S.E.2d 566
 
 , 570 (2007) ). We
 
 *473
 
 also review issues of statutory interpretation
 
 de novo
 
 .
 
 State v. Davis
 
 ,
 
 368 N.C. 794
 
 , 797,
 
 785 S.E.2d 312
 
 , 315 (2016).
 

 B. Discussion
 

 N.C. Gen. Stat. § 7A-272(a) provides that "[e]xcept as provided in ... Article [22], the district court has exclusive, original jurisdiction for the trial of ... misdemeanors." N.C. Gen. Stat. § 7A-272(a) (2017) ;
 
 see also
 

 State v. Felmet
 
 ,
 
 302 N.C. 173
 
 , 174,
 
 273 S.E.2d 708
 
 , 710 (1981) ("Exclusive original jurisdiction of all misdemeanors is in the district courts of North Carolina." (citing N.C. Gen. Stat. § 7A-272 ) ). Section 7A-271 of Article 22 provides in relevant part that "the superior court has jurisdiction to try a misdemeanor[ ] ... [w]hen the charge is initiated by presentment[.]" N.C. Gen. Stat. § 7A-271(a)(2) (2017). " '[I]nitiated' refers to how the criminal process in superior court began, not to what the first criminal process of any kind in any court was."
 
 State v. Gunter
 
 ,
 
 111 N.C. App. 621
 
 , 625,
 
 433 S.E.2d 191
 
 , 193 (1993) (interpreting these statutes and rejecting the defendant's argument that the superior court lacked jurisdiction over a charge initiated by presentment because the district court first acquired jurisdiction over the same charge by citation).
 

 Here, the 8 March 2015 misdemeanor DWI citation granted the district court authority to exercise its original jurisdiction over the charge.
 
 See
 
 N.C. Gen. Stat. § 7A-272(a). However, after the 6 June 2016 presentment and later indictment, the superior court had authority to exercise its jurisdiction over the charge.
 
 See
 
 N.C. Gen. Stat. § 7A-271(a)(2) ;
 
 see also
 

 Gunter
 
 ,
 
 111 N.C. App. at 625
 
 ,
 
 433 S.E.2d at 193-94
 
 (holding that although a citation invoked the district court's jurisdiction, a later presentment and indictment charging the same offense vested the superior court with jurisdiction). Because the charge in superior court was initiated by presentment, the superior court acquired jurisdiction over the offense when the indictment issued, and it thus properly denied the motion to dismiss the indictment for lack of jurisdiction.
 

 Nonetheless, defendant argues that because the State never dismissed the citation in district court, that charge remained pending and active, and thus the superior court was required to dismiss the indictment.
 
 See
 
 N.C. Gen. Stat. § 15A-954(a)(6) (requiring a superior court to "dismiss the charges stated in a criminal pleading if it determines that[ ] ... the defendant has previously been charged with the same offense in another North Carolina court of competent jurisdiction, and the criminal pleading charging the offense is still
 
 pending and valid
 
 ." (emphasis added) ). We disagree.
 

 *462
 

 *474
 
 Here, in response to defendant's motion to dismiss the indictment in superior court, the State replied as follows:
 

 [STATE]: ... [T]he matter that was left in District Court is simply superceded by this indictment. A simple search of our coding and our records indicates that the only pending matters in Buncombe County against [defendant] are the Superior Court matters. The District Court case-the matter that originated in District Court is simply no longer pending. This particular indictment super[s]eded that. ...
 

 As a result of the fact that there's still no pending matter in District Court ... this sort of eliminates any idea of a competing claim, that the State is attempting to find him guilty or prosecute him in two separate courtrooms. The matter in District Court just simply isn't there any more. It's here now based on that indictment.
 

 As reflected, although the State never filed a formal dismissal of the citation in district court, it made clear that it had abandoned its prosecution in district court to the exclusion of its superior court prosecution, which effectively served as the functional equivalent of a dismissal of the district court charge, rendering it no longer valid and pending.
 
 See
 

 State v. Cole
 
 , No. 17-732, slip op. at 5-9,
 
 2018 WL 3977995
 
 (N.C. App. Aug. 21, 2018) (unpublished) (rejecting this same argument, reasoning in relevant part that it was "evident from the transcript that defendant was only prosecuted through the Superior Court action and that the District Court action was effectively dismissed-even if no formal dismissal occurred"). Further, as a result of the State's announced election to only prosecute the charge in superior court, once jeopardy attached to the indictment, the State would be barred under double jeopardy principles from later prosecuting that charge in district court.
 
 Cf.
 

 State v. Courtney
 
 , --- N.C. App. ----, ----,
 
 817 S.E.2d 412
 
 , 420 (explaining the binding effect of the "State's election" rule in the context of a district attorney's announced election to dismiss and not to exercise the State's right to retry a hung charge after jeopardy had already attached to the indictment),
 
 disc. rev. allowed
 
 , --- N.C. ----,
 
 818 S.E.2d 109
 
 (2018). Accordingly, we overrule this argument.
 

 Defendant also relies on
 
 State v. Karbas
 
 ,
 
 28 N.C. App. 372
 
 ,
 
 221 S.E.2d 98
 
 (1976), to support his argument that the State's failure to dismiss the citation in district court precluded the superior court from exercising its jurisdiction over the same offense. In
 
 Karbas
 
 , we stated that "[w]here two courts have concurrent jurisdiction of certain offenses, the court
 
 *475
 
 first exercising jurisdiction in a particular prosecution obtains jurisdiction to the exclusion of the other. But when it enters a
 
 nolle prosequi
 
 it loses jurisdiction and the other court may proceed."
 
 Id.
 
 at 374,
 
 221 S.E.2d at 100
 
 (citation omitted). Defendant's reliance on
 
 Karbas
 
 is misguided.
 

 To the extent that the district and superior courts here shared concurrent jurisdiction over the misdemeanor DWI charge, that concurrent jurisdiction did not exist until the superior court indictment issued on 11 July 2016. Defendant points to no evidence suggesting that, after that time, the district court exercised jurisdiction over the offense. Indeed, in his 8 September 2016 motion to dismiss the indictment for lack of jurisdiction, defendant stated "[t]he citation issued in this mat[t]er remains active,
 
 although the case is not currently calendared in district court
 
 ." (Emphasis added.) As there is no record evidence suggesting the district court exercised its jurisdiction over the offense after the existence of concurrent jurisdiction with the superior court,
 
 Karbas
 
 's language that the first court exercising jurisdiction over a shared offense is exclusive of the other court absent a dismissal terminating the first court's jurisdiction provides no support here. Accordingly, we overrule this argument.
 

 In sum, because the charge was initiated by presentment, the superior court acquired jurisdiction over the offense after the indictment issued. Despite the State's failure to dismiss the citation in district court, it made clear it had abandoned its prosecution in district court, which served as the functional equivalent of a dismissal, rendering it no longer valid and pending, and once jeopardy attached to the indictment, the State would be precluded from later prosecuting the
 
 *463
 
 charge in district court under double jeopardy principles. Further, no evidence suggests the district court exercised its jurisdiction over the offense once concurrent jurisdiction with the superior court existed. Therefore, we affirm the superior court's denial of defendant's motion to dismiss the indictment for lack of jurisdiction.
 

 IV. Motions to Suppress Evidence
 

 Defendant next argues the superior court erred by denying his motions to suppress the evidence discovered as a result of the traffic stop. First, he argues the results of the roadside sobriety tests and later intoxilyzer test should have been suppressed as tainted fruit of the poisonous tree of the illegal search and seizure arising from the unlawfully compelled roadside breath test. Second, he argues the intoxilyzer results should have been suppressed on the additional basis that the test was administered in violation of his implied-consent rights under
 
 N.C. Gen. Stat. §§ 20-16.2
 
 and 20-139.1(b5). We disagree.
 

 *476
 

 A. Preservation
 

 Defendant acknowledges that, although he filed pretrial motions to suppress this evidence on these grounds, he failed to object to the admission of that evidence at trial. Therefore, he argues that the superior court's admission of this evidence constituted plain error. N.C. R. App. P. 10(a)(4). Accordingly, we review these issues only for plain error.
 
 See, e.g.
 
 ,
 
 State v. Waring
 
 ,
 
 364 N.C. 443
 
 , 468,
 
 701 S.E.2d 615
 
 , 632 (2010) ("[T]o the extent defendant failed to preserve issues relating to the motion to suppress, we review for plain error.").
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal citations, quotation marks, and brackets omitted). "The first step under plain error review is[ ] ... to determine whether any error occurred at all."
 
 State v. Lenoir
 
 , --- N.C. App. ----, ----,
 
 816 S.E.2d 880
 
 , 883 (2018) (quoting
 
 State v. Oxendine
 
 ,
 
 246 N.C. App. 502
 
 , 510,
 
 783 S.E.2d 286
 
 , 292,
 
 disc. rev. denied
 
 , --- N.C. ----,
 
 787 S.E.2d 24
 
 (2016) ).
 

 B. Review Standard
 

 Our review of a suppression ruling is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) (citations omitted). Legal conclusions "are fully reviewable on appeal."
 
 State v. Hughes
 
 ,
 
 353 N.C. 200
 
 , 208,
 
 539 S.E.2d 625
 
 , 631 (2000).
 

 C. Tainted Fruit
 

 Defendant asserts the results of the roadside sobriety tests and intoxilyzer test should have been suppressed as tainted fruit of the poisonous tree of the illegal search and seizure caused by the unlawfully compelled roadside breath test. We disagree.
 

 Initially, we note that although defendant in his written suppression motion and at the suppression hearing argued that,
 
 inter alia
 
 , all evidence discovered after the illegal roadside breath test should have been
 
 *477
 
 suppressed as tainted fruit of that poisonous tree, the superior court here did not directly address whether that evidence may have been acquired as a direct consequence of the illegal breath test, or whether Officer Ray was justified in prolonging the initial traffic stop to investigate defendant's potential impairment. Rather, the superior court concluded that reasonable suspicion existed to justify the initial traffic stop based primarily on defendant's license plate not being illuminated in violation of
 
 N.C. Gen. Stat. § 20-129
 
 and that, notwithstanding the results of the illegal roadside breath test, the facts known to Officer Ray, including the later acquired results of the roadside sobriety tests, established probable cause to arrest defendant for DWI. Nonetheless, "[t]he question for review is whether the ruling of the trial court was correct and not whether the reason given ...
 
 *464
 
 is sound or tenable. The crucial inquiry for this Court is admissibility and whether the ultimate ruling was supported by the evidence."
 
 State v. Bone
 
 ,
 
 354 N.C. 1
 
 , 8,
 
 550 S.E.2d 482
 
 , 486 (2001) (quoting
 
 State v. Austin
 
 ,
 
 320 N.C. 276
 
 , 290,
 
 357 S.E.2d 641
 
 , 650 (1987) ).
 

 "The 'fruit of the poisonous tree doctrine,' a specific application of the exclusionary rule, provides that '[w]hen evidence is obtained as the result of illegal police conduct, not only should that evidence be suppressed, but all evidence that is the "fruit" of that unlawful conduct should be suppressed.' "
 
 State v. McKinney
 
 ,
 
 361 N.C. 53
 
 , 58,
 
 637 S.E.2d 868
 
 , 872 (2006) (quoting
 
 State v. Pope
 
 ,
 
 333 N.C. 106
 
 , 113-14,
 
 423 S.E.2d 740
 
 , 744 (1992) ). But "[o]nly evidence discovered
 
 as a result of
 

 unconstitutional conduct
 
 constitutes 'fruit of the poisonous tree.' "
 
 McKinney
 
 , 361 N.C. at 58,
 
 637 S.E.2d at 872
 
 (emphasis added) (citing
 
 Murray v. United States
 
 ,
 
 487 U.S. 533
 
 , 542,
 
 108 S.Ct. 2529
 
 ,
 
 101 L.Ed.2d 472
 
 (1988) ). "Once the original purpose of the stop has been addressed, in order to justify further delay, there must be grounds which provide the detaining officer with additional reasonable and articulable suspicion ...."
 
 State v. Jackson
 
 ,
 
 199 N.C. App. 236
 
 , 241-42,
 
 681 S.E.2d 492
 
 , 496 (2009) (citation omitted). It follows that if facts independent of those acquired from unlawful police conduct established legal justification for a seizure, evidence discovered during that lawful detention would not be tainted as a direct consequence of unconstitutional conduct.
 
 Cf.
 

 McKinney
 
 , 361 N.C. at 59,
 
 637 S.E.2d at 873
 
 (applying this principle in the context of assessing tainted evidence in a search warrant affidavit);
 
 see also
 

 id.
 
 at 62,
 
 637 S.E.2d at 874
 
 ("[T]he admissibility of the evidence defendant sought to suppress turns on whether the
 
 untainted
 
 evidence in the supporting affidavit established probable cause to search his residence.").
 

 *478
 
 "To determine whether reasonable suspicion exists, courts must look at 'the totality of the circumstances' as 'viewed from the standpoint of an objectively reasonable police officer.' "
 
 State v. Johnson
 
 ,
 
 370 N.C. 32
 
 , 34-35,
 
 803 S.E.2d 137
 
 , 139 (2017) (quoting
 
 United States v. Cortez
 
 ,
 
 449 U.S. 411
 
 , 417,
 
 101 S.Ct. 690
 
 ,
 
 66 L.Ed.2d 621
 
 (1981), and then
 
 Ornelas v. United States
 
 ,
 
 517 U.S. 690
 
 , 696,
 
 116 S.Ct. 1657
 
 ,
 
 134 L.Ed.2d 911
 
 (1996) ). As defendant has not challenged the evidentiary sufficiency of the superior court's findings, they are binding on appeal.
 
 State v. Campbell
 
 ,
 
 359 N.C. 644
 
 , 662,
 
 617 S.E.2d 1
 
 , 13 (2005) (citations omitted).
 

 Here, the superior court rendered the following unchallenged findings to support its conclusion that Officer Ray had reasonable suspicion to justify the initial traffic stop: "[ (1) ] Defendant was coming out of a bar [ (2) ] after midnight and [ (3) ] ... weave[d] within his lane. He did not cross over the fog line but did several times ... swerve onto the fog line[.]" Additionally, the superior court rendered the following unchallenged findings to support its conclusion that, notwithstanding the roadside breath test results, Officer Ray had probable cause to arrest defendant for DWI:
 

 [ (4) ] the driving of the Defendant, [ (5) ] the strong odor of alcohol, [ (6) ] the fact that the Defendant presented his debit card rather than his [driver's license], ... [ (7) ] [defendant] did admit to drinking alcohol, and [defendant's] performance on [ (8) ] the walk and turn test, [ (9) ] the HGN test, and [ (10) ] the Romberg balance test.
 

 We conclude the superior court's findings that Officer Ray observed defendant (1) exit a bar (2) after midnight (3) and swerve several times within his driving lane, combined with its findings that after the initial traffic stop, the legality of which defendant does not challenge on appeal, (4) Officer Ray smelled a "strong odor of alcohol," (5) defendant present his debit card when asked for his driver's license, and (6) defendant initially denied but later admitted to drinking alcohol, were sufficient to establish reasonable suspicion to justify prolonging the initial traffic stop to investigate defendant's potential impairment, including administering the roadside sobriety tests. Those findings in conjunction with the findings on defendant's performance on the roadside sobriety tests in turn supported a conclusion that Officer Ray had probable cause to arrest defendant
 
 *465
 
 for DWI, which justified the later intoxilyzer test. Therefore, the superior court properly refused to suppress the results of the roadside sobriety tests and the intoxilyzer test. Accordingly, we hold the superior court did not commit plain error by admitting this evidence at trial.
 
 *479
 
 Defendant also argues that Officer Ray's testimony that "[i]f [defendant] tested low enough, [he] would [have] give[n defendant] a ride home" and "for the sake of the .08 standard, [he] was going to give [defendant] a ride home if he fell below that[,]" establishes that Officer Ray "lacked sufficient information to believe that ... defendant was appreciably impaired at the point where the alco-sensor test was administered." This argument fails because Officer Ray's
 

 subjective opinion is not material. Nor are the courts bound by an officer's mistaken legal conclusion as to the existence or non-existence of probable cause or reasonable grounds for his actions. The search or seizure is valid when the objective facts known to the officer meet the standard required.
 

 Bone
 
 ,
 
 354 N.C. at 10
 
 ,
 
 550 S.E.2d at 488
 
 (emphasis omitted) (quoting
 
 State v. Peck
 
 ,
 
 305 N.C. 734
 
 , 741,
 
 291 S.E.2d 637
 
 , 641-42 (1982) ; other citation omitted);
 
 see also
 
 id.
 

 (holding an officer's suppression hearing testimony that he did not believe he had probable cause to arrest was irrelevant in determining whether, objectively, the facts known to that officer created probable cause to justify a search-incident-to-arrest seizure of evidence). Having concluded above that the objective facts known to Officer Ray before the administration of the roadside breath test established reasonable suspicion to justify prolonging the initial traffic stop to investigate defendant's potential impairment, we overrule this argument.
 

 D. Statutory Implied-Consent Rights
 

 Defendant next asserts the superior court erred by denying his motion to suppress the intoxilyzer results because it improperly concluded that Officer Ray was not required under
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5) to re-advise him of his implied-consent rights before administering the breath test on a second machine. Defendant does not dispute that Officer Ray duly advised him of his implied-consent rights before he agreed to submit to a chemical analysis of his breath; rather, he argues that because the test administered on the first intoxilyzer machine failed to produce a valid result, it was a "nullity," and thus Officer Ray's subsequent request that defendant provide another sample to administer the test on a different intoxilyzer machine constituted a request for a "subsequent chemical analysis" under
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5). Therefore, defendant argues, Officer Ray violated his right under that statute to be re-advised of his implied-consent rights before administering the test on the second machine. We disagree.
 

 *480
 
 We review the superior court's legal conclusions
 
 de novo
 
 .
 
 Hughes
 
 ,
 
 353 N.C. at 208
 
 ,
 
 539 S.E.2d at 631
 
 . We also review issues of statutory interpretation
 
 de novo
 
 .
 
 Davis
 
 ,
 
 368 N.C. at 797
 
 ,
 
 785 S.E.2d at 315
 
 .
 

 An officer must advise a person charged with DWI of his or her implied-consent rights before requesting that person to submit to a chemical analysis of the breath.
 
 N.C. Gen. Stat. § 20-16.2
 
 (a) (2017). An officer may then request that person "submit to a chemical analysis of [his or her] blood or other bodily fluid or substance
 
 in addition to or in lieu of a chemical analysis of the breath
 
 " and, "[i]f a subsequent chemical analysis is requested pursuant to this subsection, the person shall again be advised of the implied consent rights in accordance with G.S. 20-16.2(a)."
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5) (2017) (emphasis added).
 

 The plain and unambiguous language of
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5) provides that the re-advisement right triggers only when an officer requests a person to submit to a chemical analysis of "the person's blood or other bodily fluid or substance
 
 in addition to or in lieu of a chemical analysis of the breath
 
 [.]"
 

 Id.
 

 (emphasis added). Officer Ray's request that defendant provide another sample for the same chemical analysis of the breath on a second intoxilyzer machine was not one for a "subsequent chemical analysis" under the statute. Accordingly,
 
 *466
 

 N.C. Gen. Stat. § 20-139.1
 
 (b5) 's re-advisement requirement never triggered, and the superior court properly refused to suppress the intoxilyzer results on this basis.
 

 Nonetheless, defendant relies on
 
 State v. Williams
 
 ,
 
 234 N.C. App. 445
 
 , 450,
 
 759 S.E.2d 350
 
 , 353 (2014), to support his position. He argues that "
 
 Williams
 
 stands for the unqualified proposition that when a subsequent test is requested, the defendant must be re-advised of the implied consent rights." We disagree. In
 
 Williams
 
 , we held that when a person refuses to submit to a breath test, an officer must re-advise that person of his implied-consent rights before requesting he or she submit to a blood test instead of a breath test pursuant to
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5).
 

 Id.
 

 at 452
 
 ,
 
 759 S.E.2d at 354
 
 . Defendant's reliance on
 
 Williams
 
 is misguided because the officer there requested the defendant to submit to a
 
 different
 
 chemical analysis-a blood test-
 
 in lieu of
 
 the breath test. Here, Officer Ray only requested that defendant submit to one chemical analysis-the breath test-which was not in addition to or in lieu of the original breath test. Accordingly, we overrule this argument.
 

 V. "Prior Conviction" for Enhanced Sentence
 

 Last, defendant asserts the superior court erred by sentencing him as a Level Two offender after finding the existence of a grossly aggravating
 
 *481
 
 factor based on upon his prior DWI conviction. Defendant was convicted in superior court of DWI on 15 September 2016. He appealed that conviction on 26 September 2016, which remained pending before this Court at the time of the instant 31 August 2017 sentencing hearing. Before the superior court and now on appeal, defendant argues his prior DWI conviction could not be used to enhance his sentence because the prior conviction, since it was pending on appeal, was not "final" and therefore could not be used as a "prior conviction" to find the existence of a grossly aggravating factor under
 
 N.C. Gen. Stat. § 20-179
 
 (c). We disagree.
 

 We review issues of statutory interpretation
 
 de novo
 
 .
 
 Davis
 
 ,
 
 368 N.C. at 797
 
 ,
 
 785 S.E.2d at 315
 
 . "When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein."
 
 State v. Green
 
 ,
 
 348 N.C. 588
 
 , 596,
 
 502 S.E.2d 819
 
 , 824 (1998) (quoting
 
 In re Banks
 
 ,
 
 295 N.C. 236
 
 , 239-40,
 
 244 S.E.2d 386
 
 , 388-89 (1978) ).
 

 N.C. Gen. Stat. § 20-179
 
 (c) defines a "prior [DWI] conviction" as a "grossly aggravating factor[ ]" for enhanced sentencing purposes if "[t]he conviction occurred within seven years before the date of the offense for which the defendant is being sentenced[.]"
 
 N.C. Gen. Stat. § 20-179
 
 (c)(1)(a) (2017).
 
 N.C. Gen. Stat. § 20-4.01
 
 provides in relevant part that "[u]nless the context requires otherwise, the following definitions apply throughout ... Chapter [20] ...." Subdivision (4a)(a)(1) of that section defines "[c]onviction" in relevant part as "[a]
 
 final
 
 conviction of a criminal offense[.]"
 
 N.C. Gen. Stat. § 20-4.01
 
 (4a)(a)(1) (2017) (emphasis added). Defendant argues that because his prior DWI conviction was pending on appeal at the time of the sentencing hearing, the prior conviction was not "final" under Chapter 20's definition of a "conviction" and it thus did not constitute a "prior conviction" under
 
 N.C. Gen. Stat. § 20-179
 
 (c)(1)(a). We disagree.
 

 Despite
 
 N.C. Gen. Stat. § 20-4.01
 
 (4a)(a)(1) defining a conviction as a "final" conviction, we believe the "context [of finding the existence of a grossly aggravating factor based upon a prior DWI conviction in superior court] requires,"
 

 id.
 

 § 20-4.01, an interpretation that a "prior conviction" not be limited to only those not pending on direct appeal to the appellate courts. The plain and unambiguous language of the more specific statute of
 
 N.C. Gen. Stat. § 20-179
 
 (c)(1)(a) defines a "prior conviction" merely as a "conviction [that] occurred within seven years before" the later offense. Because there is no language limiting
 
 *482
 
 that definition to a "final" conviction or only those not challenged on appeal, we have no authority to interpret the statute as imposing such a limitation.
 

 Further, even if we found this statutory language ambiguous, we find support for our interpretation on the grounds that interpreting it otherwise would undermine the
 
 *467
 
 purpose behind enhancing a repeat DWI offender's sentence, as a person with a qualifying prior conviction appealed from superior court could be sentenced for a later conviction as though he or she had no prior conviction. Additionally, we note that if a person's sentence is enhanced based upon a prior DWI conviction that is later reversed on direct appeal, he or she is entitled to be resentenced at the proper offender level without that prior conviction.
 
 See
 

 State v. Bidgood
 
 ,
 
 144 N.C. App. 267
 
 , 276,
 
 550 S.E.2d 198
 
 , 204 (2001) (remanding for resentencing on the proper prior record level when the defendant's sentence was enhanced based on a prior conviction that was subsequently reversed on appeal).
 

 Therefore, the superior court properly concluded that defendant's prior DWI conviction, despite it being pending on appeal, constituted a "prior conviction" under
 
 N.C. Gen. Stat. § 20-179
 
 (c)(1). Accordingly, we hold the superior court properly found the existence of a grossly aggravating factor based on the prior DWI conviction and affirm its sentence.
 

 As a secondary matter, we note that this Court has since filed an opinion adjudicating defendant's appeal from his prior DWI conviction.
 
 See
 

 State v. Cole
 
 , No. 17-732,
 
 2018 WL 3977995
 
 (N.C. App. Aug. 21, 2018) (unpublished). While we found no error in part, we also remanded in part for resentencing and for the entry of a suppression order,
 

 id.
 

 slip op. at 19, with instructions for the superior court to resolve a conflict in the testimony presented at the suppression hearing,
 

 id.
 

 slip op. at 10-12. We reiterate that if this DWI conviction is later overturned, defendant is entitled to be resentenced at the appropriate offender level and the entry of a properly reflective judgment.
 

 VI. Conclusion
 

 The superior court properly denied defendant's motion to dismiss the indictment for lack of jurisdiction because that charge was no longer pending or valid in district court. The superior court properly refused to suppress the evidence obtained after the roadside breath test because its findings support a conclusion that, before that test, Officer Ray had objective reasonable suspicion to justify prolonging the initial traffic stop to investigate defendant's potential impairment. The superior court also properly refused to suppress the intoxilyzer results because
 
 *483
 
 it properly concluded that Officer Ray's request that defendant provide another sample for the same breath test on a different machine was not a request for a "subsequent chemical analysis" triggering
 
 N.C. Gen. Stat. § 20-139.1
 
 (b5) 's re-advisement requirement. Absent error in these suppression rulings, the trial court did not commit plain error by admitting that evidence at trial. Finally, the superior court properly concluded that defendant's prior DWI conviction, despite it being pending on appeal, constituted a "prior conviction" under
 
 N.C. Gen. Stat. § 20-179
 
 (c)(1), and thus supported its finding of the existence of a grossly aggravating factor for enhanced sentencing purposes. Accordingly, we hold that defendant received a fair trial and sentence, free of error.
 

 NO ERROR.
 

 Chief Judge McGEE and Judge ARROWOOD concur.